Lauderdale County *v.* Fargason.

LAUDERDALE COUNTY *v.* JNO. T. FARGASON,

AND

JNO. T. FARGASON *v.* R. A. PARKER *et al.*

CONSTITUTIONAL LAW. *Powers of county courts to subscribe for stock in railroads.* Under the Constitution of 1834, the act of the Legislature of 1867, providing that " the county court of any county through which the line of the Mississippi River Railroad is proposed to run, a majority of the justices in commission at the time concurring, may make a corporate or county subscription to the capital stock of said railroad company of an amount not exceeding two-thirds of the estimated cost of grading the roadbed through the county and preparing the same for iron rails"; and providing, that after the subscription shall have been made by the court, the court should levy an assessment on taxable property to pay said subscription; and providing that the court might issue bonds for said subscription, is constitutional.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

GANTT & PATTERSON for complainant.

H. C. KING for Oldham.

TAYLOR & CARROLL, ESTES & ELLETT and HUMES & POSTON for Fargason.

FREEMAN, J., delivered the opinion of the court.

The leading question involved in these cases, and the one conclusive of the result if decided in the affirmative, is, whether the bonds issued by the county of Lauderdale in aid of the Mississippi River Railroad

Company are valid or void.    If valid, then the other
questions which have been argued before us are un-
necessary to be considered.    We therefore dispose of
this question first.

The bonds of the county in contest were issued in
pursuance of two acts of the Legislature—one passed
February 25, 1867, the other November 5, 1867.    By
section 6 of the first act, it was provided that the
county court of any county through which the line
of the Mississippi River Railroad is proposed to run,
a majority of the justices in commission at the time
concurring, may make a corporate or county sub-
scription to the capital· stock of said railroad company
of an amount not exceeding two-thirds of the esti-
mated cost of grading the roadbed through the county
and preparing the same for the iron rails.    It is
further provided, that after the subscription shall have
been entered upon the books of the company, either
by the chairman of the county court, or by any other
member of the court appointed therefor, the court shall
proceed, without any further reference or delay, to
levy an assessment on all taxable property within the
county, sufficient to pay said subscription, to be paid
in three annual instalments.    It was also further pro-
vided, that it should be lawful for the county court
making such subscriptions, to issue short bonds to the
railroad company, in anticipation of the collection of
the annual levies, if thereby the construction of the
work may be facilitated.    By the act of November
5, 1867, this subscription was authorized to be made
at any monthly term of the courts, or at any special

Lauderdale County *v.* Fargason.

term of said courts, provided a majority of all the justices in commission in the county shall be present when any subscription is made, and also a majority of those present shall concur therein.

Under these provisions the bonds in controversy were issued, and the question is whether they are valid obligations of the county.

It is not denied in argument that the authority purporting to be given in these statutes has been followed, or that any irregularities are found in the process of issuance of the bonds. The objection taken is, that the acts we have cited are in violation of the then Constitution of the State—the Constitution of 1834—and consequently conferred no authority on the county courts to issue them.

Taxation by counties and incorporated towns for the purpose of aiding in building railroads in such counties, or leading to such towns, has been recognized as authorized under sec. 29, art. 2, of the Constitution of 1834, since the leading case of *Mayor and Aldermen of Nashville* v. *Nichol,* 9 Hum., 250 (Cooper's ed.), decided in 1848, and again affirmed in *L. & N. R. R. Co.* v. *County Court of Davidson et al.,* 1 Sneed, 637, after most elaborate discussion by the ablest counsel in the State at the time. Whatever may be our views as to the propriety of the principles adjudged in these cases, they have been too long acquiesced in and acted on to be now disturbed. As an original question, the writer of this opinion would hold no such power could be conferred on counties or incorporated towns.

The section (29) referred to is in these words: "The General Assembly shall have power to authorize counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law, and all property shall be taxed according to its value upon the principles established in regard to State taxation."

The objection taken in this case concedes this power, but insists that the law authorizing these bonds, and levy of taxes to meet them, and the subscription to be made, is obnoxious to the provisions of sec. 7, art. 11, of the Constitution, in these words: "The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals, inconsistent with the general laws of the land; nor to pass any law granting to any individuals rights, privileges, immunities or exemptions, other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law; provided always, that the Legislature shall have power to grant such charters of incorporation as they may deem expedient for the public good." It is maintained that by what is known as the general internal improvement act of the Legislature of 1852, entitled "An act to authorize and regulate county subscriptions for railroad stock," a general rule or law was enacted regulating this question of county subscriptions to these corporations, and the leading feature of this law was, that before

Lauderdale County *v.* Fargason.

any subscription could be made, the county courts were required "to call for the approbation of the legal voters of the county," by means of an election to be held for the purpose, the precise mode of holding which was all definitely fixed in said act; and that this was the "general law of the land" on this subject at the time of the passage of the acts hereinbefore cited. These acts, authorizing the subscriptions contemplated to be made by the counties through which this road should run, adopted a different rule for such counties, and authorized these counties to make their subscription through and by the action of the county courts alone, without any submission of the question by election to the people of the county. It is earnestly contended that this law, then, is obnoxious to the Constitution, either in the fact of suspending a general law for the benefit of these counties, or by it these counties receive a benefit inconsistent with the general law of the land, or that they obtain a privilege not had nor obtainable by other counties of the State.

The act of 1852, we may here say, is not suspended by the act of 1867, nor professed to be. It remained in full force and effect. In fact, we see no reason why these counties might not have made a subscription, had they chosen so to do, under the act of 1852, the first section of which authorized any county to act under it in favor of any railroad which had then or might thereafter be located, or which might be contiguous to such counties, and on compliance with its requirements. The fact that these coun-

ties might be authorized also to subscribe through their county courts without an election, did not forbid that they should do so under the act of 1852, by means of an election and affirmative vote of a majority of the votes polled at such election. It was not a suspension of this law, then, and can only be attacked, we take it, on the ground that the act of 1867 was a law passed "for the benefit of individuals inconsistent with the general laws of the land."

Assuming that the right to subscribe for stock in a railroad corporation whose road runs through the county, is a benefit, it might be, and is a serious question as to whether the right to do so by the action of the county court alone, without an election to test the choice of the people of the county on the subject, is, or can fairly be held to be such a benefit to these counties, inconsistent with the general law of 1852, as was contemplated to be forbidden by the language of sec. 7 of art. 11 of the Constitution of 1834. The real legal benefit conferred by such laws is the authority to make the subscription in aid of a great public improvement, which in theory at least, and generally in practice, materially enhances the value of the lands and property of the counties through which they pass, and thus adds to the general prosperity and comfort of the people. The mode by which this may be done, whether by the county court without an election, or by the same court after an election, is not material to any benefit, nor does it make a part of such benefit that may result from making such subscriptions. If this be a sound view

Lauderdale County v. Fargason.

of this question, it would follow that, upon a fair construction of the law, no legal benefit has been conferred in this case which the county did not equally possess and might enjoy and exercise under the act of 1852, the mode of attaining the result only being different in the one case from the other, but the real result being equally attainable under either act. The county court, in either case, made the subscription through its chairman. In the one case the condition precedent was annexed, that the opinion of the voters should be tested by an election before it could be done; in the other, it was done simply by virtue of the authority conferred by law on the court. In either case, it was but a contract made between the county and the railroad, by which the county agreed to take and pay for so much stock in the railroad, on the terms prescribed by the law authorizing the act to be done. They might make the subscription under the act of 1852 by complying with its requirements. They could do the same under this act, and so under either act the same thing might equally be done; and no additional right has been conferred by the last act, only the mode in which the right shall be enjoyed or had is varied. If these views are conceded correct, the question in the case would be, whether a law could be passed by the Legislature authorizing one county or corporation to make subscriptions for stock in railroads in a mode different from what other counties had been authorized to subscribe for such stock. In other words, whether the Constitution requires every county and corporation to

contract to aid in such works by the precise same mode, or the contracts to be entered into by the precise same process, or under a general regulation for all counties in the State.

But passing from this view, and assuming, for the argument, that the difference in the two acts—that of 1852, and that of 1867—is a benefit, not consistent with the general law on the subject of county subscription, is this latter act unconstitutional?

We take it the real question on this aspect of it is, whether, under art. 2, sec. 29, of the Constitution, the counties and corporations of the State can be each separately authorized to incur a liability for such county and corporation purposes as the Legislature may choose to prescribe by a law passed giving such authority to the particular county or incorporated town, or whether every such tax must be imposed by a general law, equally applicable to every county and corporation in the State, thus making one general regulation on this subject for each and every county and incorporated town in the State.

We must hold the affirmative of this proposition, or else the act of 1867 is a valid law. If the Legislature may authorize a county or municipal corporation to make a contract for special purposes, and in a mode not prescribed for other counties or corporations, then this law is valid; for all that has been done in this case is to authorize a contract, involving taxation, to be made in a particular way, by which liability to taxation is incurred. A better statement of the question is, that the Legislature has authorized

these counties to contract for stock in a railroad company, and incidentally to levy a tax to meet the burden thus incurred. Must every such contract be by virtue of a general law, one operating equally upon every county and municipal corporation in the State, or may it be done by a special law?

One view of this question seems conclusive of the result. The same authority is to be exercised, or prescribed by law, to both counties and incorporated towns in the State. It has never been contended by any one that a municipal corporation could not be authorized by a special law to make contracts, and levy taxes to meet them. In fact, the purpo-es for which these corporations might incur obligations in the form of contracts, under the Constitution, were as variant as the powers conferred on these bodies;— some, for instance, were authorized to contract for water-works and gas, others not; some were authorized to establish a system of municipal common schools, others were not. Yet it was never conceived, we take it, that these powers were void, or that in any case they were to be conferred by a general law, equally authorizing any other municipality to do the same. This is the rule as to corporations created under the Constitution of 1870, but is one of the material changes introduced into our system by that Constitution. So, under the same authority, the various counties of the State might be authorized singly to contract for any public work legitimately a county purpose, and to levy a tax to meet the obligation thus incurred, or issue its bonds, by way of antici-

pating its revenues, as a mode of doing the thing authorized, without at the same time every other county, that might not have need for any such work, to do the same thing. Such has been the uniform practice under the Constitution of 1834, down to the adoption of the Constitution of 1870, and, so far as we know, never questioned. Several hundred such acts are cited by counsel, fourteen of which were passed in 1837, only three years after the adoption of the Constitution of 1834.

Such authority to contract on the part of counties and incorporated towns cannot be fairly included under the terms of art. 11, sec. 7, of the constitution of 1834. That section is in terms only a prohibition against granting special privileges to individuals, or suspension of a general law for the benefit of individuals, or grants of rights, privileges or immunities or exemptions to individuals, other than those granted to all other members of the community existing under like conditions. But these prohibitions as to privileges can have no rightful application to the contracting obligations by which burdens are self-imposed by counties and incorporated towns. They are neither within the spirit or letter of this clause of the Constitution. The only limitation imposed upon the Legislature as to the power to taxing counties, or their taxing themselves, is, that the tax shall be for a county purpose. When such a purpose is to be carried out, the Legislature may authorize the several counties and incorporated towns to impose the necessary taxes to meet the burden thus contracted. The

language is, the *several*, not *any* county; that is, each for itself may be so authorized to tax, in such manner as shall be prescribed by law.

It having been settled that a railroad is a county purpose, then the several counties may contract 'to aid such a purpose by subscribing money to such company, or taking stock in the company, and such counties as engage, by authority of law, in carrying out such county purposes, may be authorized by law to impose the necessary taxes to meet the burden thus contracted. The power to issue bonds may be conferred in such cases, as a necessary and proper means of carrying out the power to aid in the construction of such public works. As an original question, the writer of this opinion does not believe a county or corporation ought ever to have been permitted to issue a bond; but the law has been settled the other way, and millions of bonds issued in accord with the rule, and it is too late to contest it.

In this view of the question, we see no constitutional objection to the law of 1867, which simply authorized the counties through which · this railroad run to contract to aid in the work; nor any necessity that any other counties, through which it did not run, having conferred on them the same power. Why the counties of East Tennessee should be authorized to subscribe stock in a railroad company whose · road did not run within three hundred miles of them, is what we are unable to see the need of. And yet, if the law is compelled to be a general law in all such cases, it must be equally operative in all the

counties from Carter to Shelby. This being so, it would seem clear that a construction of the clauses of the Constitution cited that involves such absurd consequences, cannot be the true one. The language used, "authorizing the several counties and incorporated towns to impose taxes for county and corporation purposes," very clearly implies that the county purpose for which one may tax, may be peculiar to one county and not to another; and such, we know, is practically true.

We have been unable to see any application of the clause of the Constitution authorizing "the Legislature to grant such charters of incorporation as they may deem expedient for the public good," to the case before us. The section (6) under which the stock is subscribed for in this case, is in no sense an act granting a charter of incorporation, but is simply a provision authorizing the counties to make "a corporate or county subscription to the capital stock of the Mississippi River Railroad Company." The first act passed as part of an act, entitled "An act for the benefit of the Winchester and Alabama Railroad Company, and for other purpose," this subscription being that other purpose. The act incorporating the railroad company, with all the powers conferred, was passed in 1858, and amended as to a minor matter in 1860. The act authorizing the subscription, as we have said, was passed in 1867, and does not even purport to be an amendment to the charter of the company. It would be absurd to say that the acts authorizing counties to subscribe for stock to railroads,

were in any sense acts of incorporation. We think it certain that the Constitution of 1834 did not intend that all local improvements for county purposes, which might be deemed necessary or proper by any county, should only be authorized by a general law; on the contrary, these municipal divisions of the State were understood and well known to have different wants, the one from the other. The evil under the Constitution of 1796, as shown in the case of *Marr* v. *Enloe*, 1 Yer., 455, was that all lands in the State were required to, be taxed in such manner that no one hundred acres should be taxed higher than another, and the county courts were not authorized to tax at all for county purposes. To remedy this last, the Constitution of 1834 provided they might tax as authorized by law for county purposes, and as these purposes in one county might require one rate, and in another a different one, the Legislature has left the amount to these local *quasi* legislatures, only fixing the limit beyond which they should not go, usually not beyond the amount of the whole sum levied for State taxes. But this shows that no general law was possible on this subject that could by a general rule meet the wants of every county, and so it was left to the local discretion of the magistracy of the county to fix the amount to be levied in each county, as their wants might demand. In this way each county may be authorized to incur such liabilities as its immediate interest might demand, but there could be no need that all the other counties should have the same rule applied to them, they having no such interest to

subserve.   For instance, a county builds a new court-house or jail, and wishes to anticipate its revenues by issuing short bonds to pay for it, can it be the true construction of the Constitution that such *quasi* political corporation cannot be authorized by the Legislature to do so except by a general law, that shall alike authorize every other county in the State to do the same thing.

By sec. 402 of the Code, however, it is expressly enacted that "every county is a corporation, and the justices in the county court assembled are the representatives, and authorized to act for it." In view of this, as well as the general theory that underlies our State system of local government, the county courts are the appropriate bodies to do all that is to be done by the counties—the county court assembled, the representatives of the corporation, and the body to act for it, as was done in this case—and the submission of the question of subscription to the people an exceptional method, not in accord with the general law nor the general theories of the system of which the counties are a part.

But if the counties are corporations, the argument and reasons would be all the stronger in favor of the view we have taken,—that such particular bodies or corporations might well be legislated for in order to meet their particular wants, without the necessity of a general law, authorizing every other like corporation having no such ends to do the same thing.

We add one other reason on this aspect of the question, that is, that the Legislature of a State has

all legislative or law-making power, except so far as limited either by the Constitution of the United States or of the State, either by express terms or by fair and necessary implication. There is no express pro- hibition against the Legislature authorizing any county or corporation to incur a debt such as this by a special law; and, as we think, we have shown there are no reasons from which such an implication can fairly be drawn; on the contrary, we think we have suggested reasons why the contrary view is the most reasonable and best in accord with the nature of the thing to be done, the contrary view presenting the incongruity of requiring a law to be enacted, required only by the local wants of the particular corporate body, in such form that every other having no such requirement should have the like authority This would serve no practical end, and be a work of no utility to any one, nor serve any good purpose as far as we are able to see. This all goes on the idea that the Legislature might authorize counties and cor- porations, under the Constitution of 1834, to create debts in the form of bonds—a question, as an original one, as we have said, of far more difficulty, in the view of the writer of this opinion, but one too long settled and recognized now to be disturbed.

To recur for a moment to the language of the Constitution giving the authority to tax themselves, by the action of the Legislature, to counties and corpora- tions, we think its terms indicate definitely that such power might be conferred in any particular case on any one or more counties. It is: " The *several* coun-

ties and incorporated towns in this State." The word several is defined by Mr. Webster—"Each particular, or a small number, singly taken." This being so, the plain meaning of the words would be, that each particular county, or a small number, or any number of the counties, singly taken, may be so authorized. If the power to tax 'in any particular case may be conferred on a smaller number than the whole number in the State, or on one, there can certainly be no reason why the power to incur an obligation for which the tax became necessary, should be required to be given by a law more general than the one that authorized the taxation to meet the obligation thus incurred.

For these reasons, we hold that the law of 1867, conferring on the county court of Lauderdale county the power to make the subscription and issue the bonds in question, was valid, and not in violation of the Constitution of the State.

The case of *R. H. Wallace* v. *The County Court of Tipton County*, in which different views were expressed from this opinion, is overruled.

This being so, the other matters involved in the records before us need not be considered, and the rights of the parties can readily be adjusted, we take it, by counsel.

Lauderdale County *v.* Fargason.

TURNEY, J., delivered the following dissenting opinion:

By the 6th section of an act of the General Assembly, passed February 25, 1867, it was enacted:

"That the county court of any county through which the line of the Mississippi River Railroad *is proposed to run,* a majority of the justices in commission at the time concurring, may make a corporate or county subscription to the capital stock of said railroad company of an amount not exceeding two-thirds of the estimated costs of grading the roadbed through the county and preparing the same for the iron rails, the said costs to be verified by the sworn statement of the president or chief engineer of the company.   And after such subscription shall have been entered upon the books of the company, either by the chairman of the county court or by any other member of the court appointed therefor, *the court shall proceed, without further reference or delay, to levy an assessment,* on all taxable property within the county, sufficient to pay said subscription; and the same shall be payable in three annual instalments, commencing with the fiscal year in which said subscription shall be made.   And it shall be lawful for the county courts making the subscriptions as herein provided, to issue short bonds to the railroad company in anticipation of the collection of the annual levies, if thereby the construction of the work may be facilitated, *and in all other respects, except as herein specifically provided, the capital stock of said railroad company to be sub-*

*scribed by counties shall be governed by the general im-
provement laws of the State.*"

The general improvement laws referred to are the
acts of 1851–2, ch. 117, sec. 2, and found at sec.
1142 *et seq.* of the Code, ch. 4, headed, "Of the sub-
scription to railroads by counties and incorporated
towns."

That statute provides, amongst other things, "The
approbation of the legal voters of the county, town
or city to the proposed subscription, *must first be ob-
tained by election, held by the sheriff in the usual way
in which popular elections are held.*" It also provides
the manner of ordering the election. ' That the entire
line of road in which the stock is proposed to be
taken, shall be surveyed by a competent engineer, and
*substantially located by designating the termini and ap-
proximating the general direction of the road, and esti-
mating the grading, etc.* That the election shall be
advertised for thirty days, etc., with other provisions
and conditions.

Art. 11, sec. 7, of the Constitution of 1834, or-
dains : "The Legislature shall *have no power to sus-
pend any general law for the benefit of any particular
individual, nor to pass any law for the benefit of indi-
viduals inconsistent with the general law of the land,*
nor to pass any laws granting any individual or in-
dividuals rights, privileges, immunities or exemptions,
other than such as may be by the same law extended
to any member of the community who may be able
to bring himself within the provisions of such law."

It is claimed that under the provisions of the act

of 1867, and in substantial compliance therewith, the county court of Lauderdale county subscribed to the Mississippi River Railroad and issued bonds to a large amount.

One of the questions presented for determination is, Is that act constitutional, or does it have the effect of suspending the general improvement act of 1852?

The precise question was before us at this place at the April. term, 18—, in the case of *R. H. Wallace et al.* v. *The County Court of Tipton County.* The court (Judge Deaderick delivering the opinion) was unanimous in opinion that the act fell within the prohibitions of the article of the Constitution referred to, and if allowed to operate, suspended the general law of 1852. That, therefore, it conferred none of the power upon the county courts intended to be embraced by it, and that all acts done under it were void. This holding was adhered to on a petition to rehear. We still think the reasoning and conclusion in that case sound.

The act before us suspends the general law in providing for subscription to a road that is merely *proposed* to run through a county, and suspends or repeals the general law requiring *a substantial location, fixing of termini and general direction of the road;* in giving the power of subscription to a majority of the justices in commission without the election required by the general law, and providing in terms that the court shall proceed, *without further reference or delay,* to *levy an assessment on all taxable* property; and in providing, in express and direct terms, that "*in all*

---

---

*other respects, except as herein specifically provided, the capital stock of the railroad company to be subscribed shall be governed by the general internal improvement laws of the State."*

It seems to us that the statement of the laws solves the question, and makes void the act of 1867.

A benefit was conferred upon the railroad company by the subscription in the mode pointed out by a statute, that takes from the taxpayers the voice, by election, given by the general law,—the late law repealing the general law in all things provided for in the last, and suspending a general law for the benefit of the individuals composing the corporation. It takes from the county court the power of ordering an election, and if the county desires to subscribe to the enterprise, it must do it solely through the county court in the manner indicated or not at all.

The case of the *L. & N. R. R. Co.* v. *Davidson County,* 1 Sneed, 637, is no authority upon the question here. In that case the only questions were as to the constitutionality of the general improvement act of 1851–2, under which the proceedings in the case arose, and whether a railroad was a county purpose.

The repugnancy of the late to the general law is plain. That repugnancy is violative of the Constitution, and, as we think, makes the act of 1867 void.

DEADERICK, C. J.:

I concur in the foregoing opinion.