Lee, J.
This was an action of ejectment brought by the plaintiff in error against the defendant, in the Circuit court of Carroll county. The plaintiff claimed under a grant from the commonwealth to himself for *490 eleven hundred and ninety-four and a half acres of land in Carroll county, bearing date on the 31st of October 1846. The defendant claimed under a grant to one William Garrott for four hundred acres of land in Montgomery county, bearing date on the 12th of October 1790, and several intermediate successive contracts for the sale of the same between different persons claiming under that grant, and through whom he sought to connect himself with the patentee. The land embraced by this grant lies wholly within the boundary of the grant to the plaintiff, and he insisted that it had been forfeited to the commonwealth prior to the emanation of his grant by reason of the failure of the owner to comply with the provisions of the act of the 27th of February 1835 requiring the owners of lands omitted from the books of the commissioners of the revenue to cause the same to be entered in the proper counties and charged with taxes, and to pay all such as would not have been relinquished under the provisions of the act of the 10th of March 1832 had they been returned delinquent prior to the passage of that act. The defendant pleaded 'the general issue, and upon the trial, the jury found a special verdict setting out all the facts proved; and upon that verdict the court gave judgment for the defendant. To this judgment a supersedeas has been awarded by a judge of this court.
The county of Carroll was formed of part of the county of Grayson by an act passed on the 17th of January 1842. The county of Grayson was formed of part of the county of Wythe by an act passed on the 7th of November 1792; and the county of Wythe was formed of part of the county of Montgomery by an act passed on the 1st of December 1789. So that the land granted to Garrott though described as lying in the county of Montgomery, in fáet was situate at the date of the grant in the county of Grayson which *491 had been created after his entry and survey were made, but before the same were carried into grant. It does not appear whether it was ever upon the books either the county of Montgomery or the county of Wythe, but it is found that it was never on the books of Grayson county up to the time of the formation of Carroll county, nor on those of the latter prior to the year 1847. Thus it was ascertained to be omitted land in regard to which the directions of the act of 1835 had not been complied with. But the defendant contended that his case came within the exception contained in the second section of that act, which exempted from the forfeiture which it declared, all lands which at the date of the act were in the actual possession of the owners or proprietors thereof.
I think the special verdict sufficiently ascertains that at the time of the passage of the act of 1835, the land in question was in the actual possession of a party under whom the defendant claimed title. The land had been claimed by one William Moore under the Garrott title, and he is found to have been in the actual possession of it during his lifetime. -He died in 1820, and upon the division of his estate it was allotted to his son Samuel D. Moore. In December 1820 Samuel D. Moore contracted by bond to convey the same to one Harden H. Moore, and the latter used the land as a cattle farm and had tenants whom he permitted to reside upon it in consideration of their taking care of his stock. And this possession he kept up from the time of his purchase till the year 1843 when he assigned the title bond under which he held it to one John Boyd. Nor can there be any question that the defendant may avail himself of the possession of any party under whom he claims title and with whom he can connect himself, for the purpose of repelling the forfeiture sought to be set up against him, just as he might for the purpose of making out a bar under the *492 statute of limitations, The possession of those under whom he claimed was for these purposes, his possession acquired by him as an incident to his purchase from his vendor as each vendee who preceded him, in succession acquired it of the party from whom he purchased. So that if the possession of Harden Moore sufficed to protect the land from forfeiture under the act of 1835, that protection enures to the benefit of all who took the land after him under his title.
Actual possession of this land under the Garrott title being thus held in 1835, there could be no forfeiture under the second section of the act of the 27th of February of that year, if Harden Moore who thus had the possession was the owner or proprietor of the land within the meaning of that section. The words of the act are “ and upon their failure to do so” (the failure of the owners or proprietors of omitted lands to have the same entered upon the commissioner’s books and charged with taxes, and to pay such taxes as were found due), all such lands or parcels thereof not now in the actual possession of such owner or proprietor by himself or his tenant in possession shall become forfeited to the commonwealth, &c.” Was he such owner or proprietor, or tenant in possession of the true owner ?
Moore claimed through several intermediate sales under that made by Bott as attorney in fact for Garrott the patentee, to Oldham, but no conveyance from Bott is shown, nor does it appear that any was ever executed. But he received the full consideration for the land in a slave taken at three hundred dollars, and delivered the possession to Oldham. Oldham sold the land to John Bott, and delivered the possession to him; and it was subsequently purchased by William Moore who acquired the actual possession, and continued to hold it until his death, which occurred in 1820, some six or seven years after his purchase. The contract *493 of sale by Bott was, it is true, by parol, but that was no departure from his letter of attorney. The execution of the broader power conferred to sell, convey and make lawful right in fee simple, presupposed and necessarily imported a power to make a parol contract of sale, to be afterwards fully executed by the conveyance of the title. And neither Garrott nor any person claiming under him, has ever set up any pretension of right to the land adverse to any of the parties claiming under the sale from Bott to Oldham. The contract was fully executed on the part of the latter, and Harden Moore and those through whom he claimed under that contract, at the passage of the act of 1835 which speaks as of its date of the lands exempt from forfeiture, had had actual possession by themselves and their tenants without let or molestation from any quarter, for certainly twenty-one or twenty-two years, and probably for several years more; for William Moore’s possession commenced in 1813 or 1814 and it appears that Bobinson (from whom no doubt it took its name of the “Bobinson Place”) Harris and Bunch, John Bott and Oldham his predecessors in the ownership of the land under the sale by Garrott’s attorney, all had actual possession of the land, and had paid the purchase money contracted to be paid by them, respectively. Any action whatever that could have been brought against Harden Moore for th¿ recovery of the land by Garrott himself would have been effectually defeated by the statute of limitations, and even if Garrott were dead and a writ of right had been brought in the names of his heirs relying upon the seizin of their ancestor, there is the strongest probability that it would have been barred also. For the power of attorney authorizing Bott to sell the land bears date in 1802, and although the date of his sale to Oldham does not appear yet as there had been four successive sales of the property before the sale to William Moore in *494 18 1 3 or 1814, and as all these purchasers paid their purchase money and in turn had held actual possession the land for some time, longer or shorter, it might be reasonably inferred that the entire possession preyious to the passage of the act, had continued for a period not less than twenty-five years, and this would have barred any action in any name or upon any seizin whatever. Connecting this with the fact that Garrott lived in an adjoining county, and the absence of any pretence of claim whatever on his behalf or of any one claiming under him, I think the circumstances are such as may fairly raise the presumption of a grant or conveyance of the legal title to Harden Moore. That a grant may under circumstances be presumed for the purpose of quieting the possession is a well settled and familiar doctrine, and it applies as well to corporeal as to incorporeal hereditaments. Mayor of Kingston upon Hull v. Horner, Cowp. R. 111; Foley v. Wilson, 11 East. R. 56; Sumner v. Child, 2 Conn. R. 607; Eldridge v. Knott, Cowp. R. 214; Archer v. Saddler, 2 Hen. & Munf. 370; Ricard v. Williams, &c. 7 Wheat. R. 59. And if it may be presumed for this purpose, certainly the reason is not less strong where the purpose is to protect the party against a forfeiture of his estate which the courts are never" inclined to favor, by giving him the full benefit of his possession so as to invest him with the legal title, if that be necessary, to bring him within the exemption which it was the intention of the act to secure in favor of such actual possession. In this view conceding the position taken by the plaintiffs’ counsel to be correct that the possession must be accompanied with the legal title, there is an end of the question. .
It may be objected, however, that the presumption of a grant is one of fact to be made by the jury, and which cannot be made by the court upon the facts found, however well they might have justified the *495 jury in presuming a grant and finding accordingly. And such an objection would seem to be countenanced by the case of Archer, adm'r, &c. v. Saddler, above cited, 2 Hen. & Munf. 370. But if this be conceded, it would only lead to a venire de novo in order that the jury might make the presumption j and taking the special verdict as it is, I think we can now pass definitely upon the case, and that the result will be in effect the same as if a grant had been actually found.
If Harden Moore cannot in the absence of such a finding be taken to have been invested with the legal title under the patent to Garrott at the passage of the act of 1835, he had, as we have seen, a clear equitable title under a contract of sale fully complied with on the part of the vendee, and so far performed on the part of the vendor that a court of equity would have enforced full and specific performance by its decree. And it might be said with great propriety that Harden Moore was the tenant in possession of the holder of the legal title within the meaning and spirit of the act, and that thus the case is brought within the exception which the act provides. But without dwelling upon this view, I pass on to remark that there is no just reason for imputing to the legislature any intention to discriminate between the owners or proprietors of lands under legal titles and such owners or proprietors with equitable titles only. There is nothing in the terms of the act to restrict the exemption which it provides to the former to the exclusion of the latter. It applies to every owner or proprietor in actual possession by himself or his tenant, and no reference is made to the nature of his title whether legal or equitable, in the section which declares the forfeiture subject to the exemption which it embodies. Nor is there any thing in the policy of the law as disclosed by the preamble to create any discrimination between these two classes of owners. That policy was to a certain *496 extent no doubt, to secure to the commonwealth her just dues, but in a greater degree it was to remove the obstacles to the settlement and improvement of the country growing out of the ownership of “ large tracts of land” by absentee proprietors who paid no taxes upon them, and took no measures to settle and improve them or to bring them into market. This, as I think, the controlling policy of the law, could of course have no application to lands settled and held in actual possession by the owners whether their titles were legal or equitable, provided they were claimed and deduced under grants from the commonwealth. A marked feature of this act as well as of the act of April 1, 1831, upon the subject of delinquent and forfeited lands, is the benefits which they secure to the actual occupant claiming under a grant from the commonwealth. By the act of 1831 the title to land forfeited to the commonwealth for non-payment of the taxes charged thereon, and by the third section of the act of 1835 the title to land forfeited for failure to enter on the land books and have the same charged with taxes, is transferred to and vested in the actual occupant claiming under a grant and who had paid*the taxes due upon his land under his title, and this, in express terms whether his title were legal or equitable. The same respect is shown to a possession under claim of title legal or equitable, in the subsequent acts upon this subject until in 1842 the legislature went further and extended the benefits of such forfeitures to the claimants of title, legal or equitable, under grants from the commonwealth who had paid the taxes on their lands from the time they acquired such their title, without requiring the condition of actual possession. And I think there is no room to doubt that when the legislature spoke of the owners or proprietors of lands in possession, in the second section of the act of 1835, they had no regard to the nature or *497 character of the title, whether legal or equitable, by which they held them. The equitable owner in possession was substantially and for all beneficial poses, the owner or proprietor; and while under the act of 1831 and the third section of this act, a doubt might arise whether the transfer of the forfeited legal title was intended to be made only to a party in possession having the legal title under which he claimed, or might be made to a party having only an equitable estate, to remove which it is expressly declared that it should be to either, under the second section no such doubt could exist. It described a class of lands to be exempted from the forfeiture which it denounced, and it has used terms sufficiently broad to embrace equitable estates as well as legal. That a court of law is thus called on to notice equitable rights constitutes no objection. It does so for several purposes. It must do so in passing upon questions of transfer of forfeited titles under the third section and similar provisions of other acts in the series of land laws, and it never refuses to accept an equitable title as a sufficient basis for an adversary possession on which to make out a defence under the statute of limitations. For this purpose evidence of such a title has been held clearly admissible. Shanks v. Lancaster, 5 Gratt. 110; Koiner v. Rankin’s heirs, 11 Gratt. 425.
It is in vain to say that the effect of this construction will be to create a class of lands mi generis, upon which the law of forfeiture is not to operate, and that thus the commonwealth will be defrauded of her just demands for taxes upon them. If such be the effect, still we are to enquire what the law is and not what it might have been or should have been. The legislature might have gone on to provide a means by which to enforce payment of taxes upon this class of lands from the owners in possession, though they have not done so in this act. The omission however cannot *498 vary the construction, and indeed it extends as well to ^an^s °f which the owners are in the actual possession legal titles as to those held by equitable titles only; yet the former are unmistakably within the terms of the exception. And from the whole history of the legislation upon the subject of delinquent and forfeited lands it would appear that the legislature were looking less to the comparatively inconsiderable amount of revenue derived from taxation upon wild and unimproved lands assessed at that day at a very low not to say nominal rate, than to the evils growing out of absentee ownership in the serious check- which it was found to oppose to the settlement and improvement of the country. Before the passage of this act there was no law in force declaring a forfeiture of omitted lands, the act of February 9th, 1814 having repealed all previous laws forfeiting omitted lands and released all previous forfeitures under them, and the policy of forfeiting such lands was not re-established until the act of 1835. That act describes particularly the class of lands intended to be forfeited, carefully excluding such as at the date of the act were in the actual possession of the owners, and none could be forfeited unless they came fully within the terms of the description.
The position taken by the counsel that the exception in the act was to be confined to such persons as had paid the taxes chargeable upon their lands, is, I think, utterly untenable. The second section did not relate at all to lands on which the taxes had been paid but to omitted lands only, on which the taxes could not have been paid: and there is no warrant whatever for interpolating the words “ who shall have discharged all taxes charged or chargeable upon such lands from the time he acquired his title thereto” found in the third section after the words “owner or proprietor” in the second section. Such a provision *499 in thé second section would have been incongruous because its purpose was not to transfer the title to any other person but to forfeit it to the commonwealth .where the owner was in default in not entering his lands and paying the taxes and did not hold the same in actual possession. The purpose of the third section was to transfer such forfeited title to the person in actual possession and the legislature saw proper to require payment of his taxes as a condition of the transfer which it had not required for exemption from forfeiture under the second section.
Nor is there any thing in the idea that the act of March 23, 1836, operates an implied repeal of the second section. That act neither imposes a forfeiture nor extends the class of those liable to forfeiture under the act of 1835. Its design was to restrict not to enlarge. It gives further time to those imperiled by the last named act to comply with its provisions and thus avoid the penalty which it imposes, and it restricts its operation to lands omitted prior to 1832. Nor is there any thing either in the preamble or the enacting clauses which upon any fair construction can be held to do away with the exception in the second section of the act of 1835 in favor of the owners of lands which were at the date of that act in their actual possession.
That there is no exception in the act of March 5, 1846 (under which the plaintiff claims the land in controversy), in favor of actual occupants unless they claim title under grants and have paid all the taxes chai’ged or chargeable upon the lands, will not help the plaintiff’s case. The third section on which his claim rests applies only to forfeited lands, and before he can take any benefit from it, it devolves upon him to make out the forfeiture.
In any view of the case, and whether Harden Moore is to be considered as having been invested with the *500 legal title or an equitable estate only in this land, I think no forfeiture accrued of the Grarrott survey under the act of 1835, and that the Circuit court did not err in holding that the law upon the special verdict was for the defendant.
I am of opinion therefore to affirm the judgment.
The other judges concurred in the opinion of Lee, J.
Judgment affirmed.