NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* MARSHALL COUNTY *et al.*

(*Nashville,* December Term, 1929.)

Opinion filed July 19, 1930.

R. C. ARMSTRONG, FITZGERALD HALL and FRANK SLEMONS, for complainant, appellant.

T. L. COLEMAN, W. P. McCLURE and R. E. MAIDEN, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was filed to enjoin a levy of a tax for general County purposes by the County Court of Marshall in excess of the twenty (20) cent maximum authorized by the general revenue act of 1927. The constitutionality of Chapter 873, Private Acts of 1929, which authorized Marshall County, designated by population, to levy a tax for general County purposes up to a maximum of thirty-five (35) cents, is attacked as special legislation affecting this County only, inconsistent with the general law applicable to all counties of the State, and in violation of Section 8, Art. XI, Section 8, Art. I, Sections 28 and 29, Art. II, of the State Constitution, and amendment XIV of the Federal Constitution. The Chancellor overruled these objections to the private Act of 1929 and dismissed the bill. Complainants have appealed, assigning errors based on the grounds stated.

Appellants emphasize, first, the historically indicated legislative policy of the state of uniformity in conferring a maximum authority upon the counties to levy taxes for general county purposes. However this may be, it must be conceded that the legislative power is not cut off by the adoption or following of any given policy in legislation. Every new General Assembly is a law unto itself, within constitutional limitations only. This showing of legislative policy would seem to be pertinent only in construction of any ambiguity in the Act of 1929, under attack, and no ambiguity exists. The Act, clearly captioned, expressly authorizes the Quarterly

County Court to levy and collect an annual tax for general County purposes not to exceed thirty-five (35) cents on each $100 of taxable property in the County, and further provides that "this authority shall exist in the Quarterly County Court regardless of the amount of such taxes authorized to be levied and collected by the general revenue law of the State, or otherwise." The purpose of the Legislature could hardly be made plainer, including expressly the intent to take the County affected out from under the application of the general revenue law. May this be constitutionally done?

We do not conceive it to be controverted that by special legislation, (1) Counties may be empowered to make levies of taxes for special purposes, and (2) municipal corporations of towns and cities may be empowered to make levies of taxes for special, or general, purposes; that as to all such the constitutional requirements of uniformity, either in classification or taxation, do not apply.

The logic of the argument offered to distinguish the power of the Legislature to authorize by special act a county to levy a tax in a particular amount for general purposes, from the power to authorize by such legislation levies for specially designated purposes, does not clearly appear; nor does it appear how, in this regard, the conceded power of the Legislature to so deal specially and particularly with municipal corporations generally, is to be distinguished from its power to so deal with counties, long legally recognized, both by statute (Sec. 402 of the Code) and our decisions, as of a municipal character. "The County is idealized as a corporate body, represented by the justices, who occupy the relation of directors, exercising powers regulated by law. *State* v. *Anderson,* 8 Bax., 255; *Grant* v. *Lindsay,* 11 Heisk., 666. Through the County Court thus constituted the county,

in its municipal character as a corporation, acts and is acted upon." *State ex rel.* v. *Read,* 152 Tenn., 442. "A county, under our law, is a corporation; the citizens are the corporators; the county court, the agency through which this mortal immortal acts and speaks and has its being. . . . The county is also a municipal body, and as such is an arm or instrument of the State, to carry out purposes of government." *Redistricting cases,* 111 Tenn., at page 255.

In the first place, the mere designation of the specific direction which a fund raised by the tax authorized to be imposed is to take, does not appear to distinguish it fundamentally, in respect to the constitutional power to legislate specially, from the authority to levy the tax for general purposes without specific designation. Both to the same extent violate the principle here sought to be applied of uniformity as among the counties of the State. Both confer powers to tax on a given County, not conferred on all others.

And, in the second place, the principle is as applicable to counties as to municipalities. Both are arms of the State, alike governmental agencies on which the State may confer governmental functions, to such extent and with such restrictions as may seem to the Legislature demanded by their several corporate needs.

Touching the power of the Legislature to enact special laws affecting municipal corporations, in *Furnace* v. *Railroad,* 113 Tenn., at page 722, it was said:

"Since the case of *State* v. *Wilson,* 12 Lea, 246, it has been the settled law of this State that special legislation as to municipal corporations is not within the inhibition of Article XI, Section 8, of the Constitution of 1870. Since the opinion in that case (its conclusion being reaffirmed in *Ballentine* v. *Pulaski,* 15 Lea, 636), many acts

of the Legislature dealing with particular municipal corporations have been passed, some of which have been before this Court, and the authority of these two cases has been uniformly recognized.'' *Citing Williams* v. *Nashville,* 89 Tenn., 487, and other cases.

In *Quinn* v. *Hester,* 135 Tenn., 374, in which the validity of a private act was challenged as in violation of Sec. 8, Art. XI of the Constitution, in that its provisions were inconsistent with the general school law, after observing that this section has no application to special legislation for municipal corporations, the Court proceeded:

''This school district is not a municipal corporation under our cases in the sense that it can be authorized to impose taxes. As said of the levee district, however, in *Reelfoot Lake Levee District* v. *Dawson, supra,* it is clearly not a private corporation. It is, as said of the county in *State ex rel.* v. *Cummings,* 130 Tenn., 566, 172 S. W., 290, L. R. A., 1915D, 274, 'but an emanation from the State.'

''Like a municipal corporation, this school district is a mere arm or instrumentality of the government, 'created exclusively for public purposes, subject to the unlimited control of the Legislature.' *State* v. *Wilson, supra.*

''We think the reasoning of all the cases upholding special legislation respecting towns, cities and counties is equally applicable in support of the special legislation with respect to this school district, and, applying said reasoning to the case before us, we are convinced that the statute in question does not contravene Section 8, Article XI, of the Constitution.''

In *Lauderdale County* v. *Fargason,* 75 Tenn., 153, wherein a special act, applicable to certain counties only, was challenged because inconsistent with a previously passed general statute on the same subject, the special

act was sustained as within the power of the Legislature. The Court said:

"To recur for a moment to the language of the Constitution giving the authority to tax themselves, by the action of the Legislature, to counties and corporations, we think its terms indicate definitely that such power might be conferred in any particular case on any one or more counties. It is: 'The several counties and incorporated towns in this State.' The word several is defined by Mr. Webster: 'Each particular or a small number, singly taken.' This being so, the plain meaning of the words would be, that each particular county, or a small number, or any number of the counties, singly taken, may be so authorized. If the power to tax in any particular case may be conferred on a smaller number than the whole number in the State, or on one, there can certainly be no reason why the power to incur an obligation for which the tax became necessary should be required to be given by a law more general than the one that authorized the taxation to meet the obligation thus incurred."

That portion of appellant's exhaustive brief which is devoted to an attack on the use of the population basis of classification as arbitrary is hardly in point. This legislation is not sought to be, and could not be, so justified. It must be dealt with as though the County had been named. In order to stand it must be tested by the rules applicable to that class of cases in which the agency of the State has been definitely designated and restricted. This legislation, as in the *Redistricting cases* (111 Tenn., 234, 283), must be sustained, if at all, on "the hypothesis that the legislature may pass special laws for the regulation of individual counties, by name, as arms of the State government, or subordinate political entities, as distinguished from the personal relations of their several

citizens." And the gist of the justification for the act under consideration is then stated, in effect and terms reaffirmed in many of our cases, to be that, if the power conferred by the legislation,—in the instant case to tax property within the unit named,—in the Redistricting Cases to regulate the number of civil districts in the Counties,—be "a governmental function, in the sense that the counties are thereby acted upon as governmental agencies, or arms of the State government, as contra-distinguished from the regulation of the affairs of the citizens themselves, or of the duties of officers, or classes of officers, as, indeed, it seems there can be no doubt, then it follows as a necessary consequence, that special acts may be passed for the purpose of effecting this regulation"—or purpose.

In many recent decisions of this Court the test here laid down has been applied, and special laws dealt with accordingly. For example, *Ford* v. *State,* 150 Tenn., 327, 320; *Peters* v. *O'Brien,* 152 Tenn., 466; *State* v. *Trotter,* 153 Tenn., 30; and *State* v. *Knox County,* 154 Tenn., 483. In the last cited case it was said:

"There is no doubt that the Legislature has full power to pass special laws affecting particular counties as governmental or political agencies, and when the legislation is of that character the aptness of the use of the population basis becomes immaterial, as the county affected may as lawfully be designated by name. *Wilson* v. *Wilson,* 134 Tenn., 697; *Redistricting Cases,* 111 Tenn., 234; *Prescott* v. *Duncan,* 126 Tenn., 106; *State* v. *Columbia, etc., Turnpike Co.,* 133 Tenn., 450. *The question arising in each case narrows to whether the law under review affects the county in the exercise of its governmental or political functions—or affects primarily the individual citizens of the county in their private relations.*"

■ Applying this accepted test here, can it be doubted that the power to tax is a governmental function, and that a law authorizing the levy of taxes affects the county in the exercise of its governmental or political capacity? In the *Redistricting Cases, supra,* the Court expressly approved the holding in *County Court* v. *Marr,* 8 Hump., 634, that authority for the laying of a County tax "is a municipal. provision made for the regulation of the fiscal affairs of the County." Argument in support of this proposition can hardly be called for.

■ We approve the insistence of counsel for appellant, supported by many authorities, that "where a statute, public or private, general or special, applies to a county (or municipality) not in its governmental capacity as an arm of the State," etc., the constitutional prohibitory provisions invoked apply. But the contrary is true, where the statute, as here, applies to a county in its governmental capacity. In our late cases of *Howe* v. *Hawkins County,* 159 Tenn., 651, and *Roberts* v. *Roane County,* 160 Tenn., 109, 23 S. W. (2d) 239, this distinction was recognized and followed. The special acts in these cases were found to affect the officers as individuals, and not the counties in their governmental capacity. It was for this reason that the validity of the acts was denied as violative of the Constitution.

The opinion in *Southern Railway* v. *Hamblen County,* 115 Tenn., 526, wherein the power of a county is denied to levy and collect a tax for any county purpose in excess of that authorized by the General Assembly, is not in conflict with the views herein expressed. The Court in that case expressly recognized the authority of the General Assembly to delegate to the several counties in the State the power to impose taxes for county purposes, as provided by Art. II, Sec. 29, of the Constitution. Of

246

course, as therein said, the County Court has no inherent power of taxation. Counsel quote with evident emphasis the following, among other paragraphs, from this opinion: "Counties are authorized by the General Assembly to levy taxes for County purposes, *usually* by special provisions in the general revenue laws, enacted as a rule biennially for general county purposes and by special statutes for certain special purposes."

This recital of the *usual* practice of the General Assembly supports the contention made as to the general policy, or usual custom, of the Legislature in dealing with this subject, but goes no further. When the word "usually," italicized by us in the above quotation, is given effect, it is clear that the Court did not intend to deny to the Legislature the power to depart from its usual course, as it has done here.

What has been said disposes of the assignments based on alleged violations of Section 8 of Articles I and XI, the one prohibiting the imposition of burdens, and the other the granting of benefits. Both, as has been shown, have application to individuals as such, and not to municipal and county corporations, as to which special legislation is permissible if affecting the county or city in its governmental capacity; also, that the method of designation is immaterial. What has been said applies likewise to the Federal Constitutional amendment invoked.

Finally, nor do we find Sections 28 or 29 of Article II to be violated. Plainly the act relates to a county purpose. The authority is conferred on the proper exercising representative agency. *Justices of Cannon County* v. *Hoodenpyle,* 7 Hump., 145; *Railroad* v. *County Court,* 1 Sneed, 677, 678. And no requirement of uniformity of taxation is violated. The provisions have been repeated-

ly held not to demand equality and uniformity, "as between different localities of the State in the matter of local taxation. Such local taxes must merely be equal and uniform in the district to which they apply." *Quinn* v. *Hester, supra. King* v. *Sullivan County,* 128 Tenn., 393. The "law of the land" is not violated so long as the legislation is equally binding upon every member of the given community alike, and "embraces all persons who are or may come into like situation and circumstances." *Stratton Claimants* v. *Morris Claimants,* 89 Tenn., 521; *Sutton* v. *State,* 96 Tenn., 703.

All that is said in the brief for appellants in favor of a construction which will enforce the real intent of the Legislature is fully concurred in, but, as before stated, we have no ambiguity here. The meaning and intent could not have been made more clearly to appear.

As was said in *Quinn* v. *Hester, supra,* so it must be said here, that "The arguments made against the validity of this statute, when analyzed, reduce themselves to questions of policy, with which this Court has nothing to do. The power of the Legislature is limited only by the Constitution, and when we come to search the Constitution we find no provision thereof forbidding the enactment of such law."

It results that the judgment must be affirmed.