MAYOR AND ALDERMEN OF THE TOWN OF MORRISTOWN,
Plaintiffs in Error,

*v.*

JAMES E. BURKE, Defendant in Error.

(*Knoxville*, September Term, (May Session), 1959.)

Opinion filed September 9, 1960.

Paul R. Capps, Morristown, for plaintiffs in error.

Taylor & Inman, Morristown, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

James E. Burke, hereinafter called petitioner, filed his petition for a common law writ of certiorari in the Circuit Court of Hamblen County against the Mayor and Aldermen of the City of Morristown, hereinafter called the City, in which petition it was alleged in substance that the Tax Assessor had assessed properties within the municipality for the year 1959; that the Board of Equalization had accepted said assessment as correct; that thereafter the Board of Mayor and Aldermen "unlawfully, wrongfully, arbitrarily, capriciously, unjustly, without jurisdiction to do so and exceeding their jurisdiction and judicial authority and in abuse of discretionary powers if any" by resolution ordered an increase in the assessment on petitioner's real estate of 30% over and above the assessment made by the Tax Assessor and unchanged by the Board of Equalization with regard to all of his income-producing property described as commercial and at the same time ordered an increase of 50% of the amount fixed by the Tax Assessor and unchanged by the Board of Equalization with regard to all of his industrial property; it is further alleged that there was no inspection of the properties, no investigation as to the present assessments, no consideration given to the income or lack of same therefrom nor was there any basis for the action of the Board except to take the position that the need for increased revenue required this

increase of assessment as to commercial and industrial properties.

After the writ was granted by the Circuit Judge, the City moved to dismiss the writ on the following grounds:

1. That the petitioner has a full, adequate and complete remedy at law.

2. That the Court has no jurisdiction to change the assessments complained of as prayed by the petitioner and to substitute its judgment for that of the authorities designated by law to make assessments.

3. That the action of the said Mayor and Aldermen is specifically provided for by its charter and official code.

4. That the petition does not allege that the assessments complained of are equal to or in excess of the fair market value of the affected real estate, nor does it allege that said assessments are inequitable with other assessments of realty of like kind and character.

The matter was heard upon the petition and motion and upon a copy of the pertinent part of the City Code published in 1909, which will be referred to hereinafter, and upon a copy of the resolution of the Board of Mayor and Aldermen.

The petition for the writ of certiorari was sustained on the ground that the action of the Town was unlawful and arbitrary and the increased assessments were voided.

The first assignment of error is the first ground of the motion to dismiss. In substance, it is said that the petitioner should have paid his taxes under protest and filed an action to recover same.

184

If the action of the Town authorities was arbitrary and unlawful, this assignment of error would not be good. *Cox v. City of Bristol*, 28 Tenn.App. 136, 187 S.W.2d 637.

The second assignment of error is that the court erred in holding that the action of the Town was unlawful and arbitrary, because the action taken is specifically provided for by the charter and official code of the Town.

As stated in the brief in behalf of the Town, this is the meat of the lawsuit.

The Town of Morristown received its charter under Ch. 103, Private Acts of the General Assembly for the year 1903. Section 5 of same was as follows:

"Sec. 5. Be it further enacted, That the Mayor and Aldermen shall have power within the corporation to levy, assess and collect taxes upon property taxable by law for State purposes, and that said assessment may be made by corporation assessors or by the adoption of assessments made by State and County Assessors, or modification of the same. And the collection may be made by corporation collectors or by the County Trustee, as may be provided by ordinance of said corporation."

Then in 1909 the published ordinances of said Town, Sec. 248, provided in substance that the Mayor and Aldermen should annually appoint a Board of Equalization and specified their duties. The last sentence of same is as follows:

"The action of said Board when reported to the Mayor and Aldermen, shall be final as to the assessments of all property for taxation within the corporate

limits for the current year, *but subject to revision by the Mayor and Aldermen.*"

By Ch. 298, Private Acts of the General Assembly for the year 1949, said above subsec. 1 of Section 5 of the original charter is stricken and a new Section 5 is substituted, which is the one now in force. The pertinent parts of the present Section 5 relevant to this controversy provide:

"That said Board of Mayor and Aldermen shall have power within the corporation to levy, assess, and collect taxes for municipal purposes upon property within said municipality, or otherwise liable therefor, taxable by law, for State purposes, and said assessments shall be made by corporation assessors, elected by the said Board of Mayor and Aldermen."

It then provides for the annual election of a tax assessor, fixes his salary between specified limits and requires that he give bond, but nothing is said about the Board of Equalization other than at the end of the last paragraph of the new subsec. 1 of Section 5. This last paragraph provides in substance that the Tax Assessor shall make his assessment as of a certain date and continue his work until completed and file his report with the Board of Mayor and Aldermen at the earliest possible moment. It is then said:

"The municipal taxes for the year for which the assessment is made shall be levied on the basis of such assessment, *subject to review by the Board of Equalization as now provided.*"

It is the insistence in behalf of the petitioner that the Town ordinance of the year 1909 is inconsistent with the last sentence above quoted.

We are unable to agree with this insistence. The words "subject to review by the Board of Equalization *as now provided*" obviously mean that the Board of Equalization shall continue to review the assessments made by the Tax Assessor as now provided by the provision of the published Code of 1909 quoted supra.

It is *Held* in the old case of *East Tennessee V. & G. R. Co. v. City of Morristown*, Tenn.Ch.App., 35 S.W. 771, that the power conferred on the Mayor and Aldermen to levy, assess and collect through assessors authorizes the Board of Mayor and Aldermen to amend assessments so made. See 64 C.J.S. Municipal Corporations, sec. 2055, note 73, p. 788, citing this case.

Therefore, the Board of Mayor and Aldermen had the authority to revise the assessments by virtue of the language both of the old Section 5 as well as that of the new Section 5 without any express reference to it at the end of the words referring to the review by the Board of Equalization as now provided.

Therefore, unless the action of the City was unlawful and arbitrary on some other basis, the writ of certiorari should not have been sustained. Accordingly, it is insisted in behalf of the petitioner that, if it is wrong in the insistence just above made, then it is said that the City had no authority to make a blanket increase in these properties as was done.

When we examine the resolution, however, we find that the pertinent part reads as follows:

"Whereas, upon said examination of said roll of property, it appears to the Board of Mayor and Aldermen that inequalities exist in said rolls between the

assessments of industries and commercial properties on the one hand and residence property on the other, in that residences are assessed considerably high in proportion to their actual value than said industrial and commercial properties," * * *.

The resolution then orders the increase which was made and further provides that notice be sent to each affected property owner by mail informing him of this increase and offering the opportunity to be heard on a definite date between the hours of 1:00 and 3:00 P.M. for the purpose of having a hearing and ruling upon any objections the property owner may have to such increase.

Several things may be pointed out in connection with this resolution. The first is that it was not arbitrary in the sense that a blanket increase was made by fiat and no opportunity afforded the property owner to question the valuation placed on the respective properties. A second point is that it is obvious from the statement in this resolution that none of these properties were assessed at full value. It is insisted in behalf of the petitioner that the presumption must be indulged that the Tax Assessor and the Board of Equalization did their duty and complied with the law and fixed the assessments at the full market value. However, it is also necessary to presume that there is always a chance for error and it is likewise to be presumed that the Board of Mayor and Aldermen did their duty and that when they discovered in their judgment, acting within their lawful powers, that these assessments were not the full market value, because it can not be presumed that the Board of Mayor and Aldermen would have assessed the properties at more than their full value, they attempted to adjust the inequities.

■ This situation then brings up the third assignment of error which is that the petition for certiorari should have been dismissed because there was no allegation in the petition that the increased assessments were equal to or in excess of the fair market value, or were otherwise inequitable compared with assessments of other property of like kind and character.

We think that both parts of this third assignment are sustained by the statement in *McCord v. Nashville, Chattanooga & St. L. Ry.*, 187 Tenn. 277, on page 292, 213 S.W.2d 196, on page 203, where the Court said:

"There is no assertion or claim that there has been discrimination against the Nashville, Chattanooga & St. Louis Railroad when compared with the assessment of other railroads. Nor is it claimed that the property of this Railroad has been assessed at a higher rate than similar properties of other railroads."

The only discrimination appearing in this record is, according to the resolution of the City, in favor of the complaining taxpayer and against the owners of residential properties, but there is no discrimination claimed as between the owners of either commercial properties or industrial properties, as the case may be.

■ The above cited authority then quotes at length from the case of *Carroll v. Alsup*, 107 Tenn. 257, 64 S.W. 193, which need not be quoted here in full but which in substance is that when a taxpayer comes in complaining of the assessment against his property he must be able to allege and show that his property is assessed at more than its actual cash value.

Accordingly, the judgment below is reversed and the petition dismissed with costs against the petitioner.