SOUTHLAND MALL, INCORPORATED,
a Maryland corporation,

v.

Riley C. GARNER et al.

Civ. A. No. C–68–68.

United States District Court
W. D. Tennessee.

Oct. 3, 1968.

Hubert A. McBride and Newton Allen,
Armstrong, Allen, Braden, Goodman, Mc-

Bride & Prewitt, Memphis, Tenn., for plaintiff.

William H. Williams, County Atty., Memphis, Tenn., for defendants.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

Plaintiff, Southland Mall, Inc., a Maryland corporation, has sued the Tax Assessor and the Trustee (tax collector) of Shelby County, Tennessee and the members of the Quarterly Court (a legislative body) and County Commission of the County to recover a refund of realty tax for the year 1967 that was assessed on plaintiff's shopping center in the County and paid by plaintiff under protest. Plaintiff relies on both diversity and general federal question jurisdiction (28 U.S.C. §§ 1331 and 1332), and the jurisdictional amount is present.

Defendants filed a motion to dismiss, relying on several grounds for dismissal but did not contest the existence of diversity of citizenship. However, when the motion came on to be heard, it appeared to the Court, during the course of the argument, that plaintiff's principal place of business might well be in Tennessee and therefore directed counsel for defendants to investigate this question. The Court held under advisement the motion to dismiss. Since then, defendants have taken the deposition of plaintiff's resident manager and have filed a motion for partial summary judgment on the ground that plaintiff's principal place of business is indeed in Tennessee. A hearing has been held on this motion for partial summary judgment, at which plaintiff's resident manager testified further and argument was had. The Court likewise held this motion under advisement. The purpose of this memorandum decision is to dispose of both the motion to dismiss and the motion for partial summary judgment.

As we read plaintiff's complaint, it contends (1) that its property was assessed at an amount in excess of actual value in violation of the Constitution and statutes of Tennessee (Article II, § 28 and T.C.A. § 67–605), and (2) that other property in the County of the same class was systematically and intentionally assessed at 50% of actual value, that plaintiff's property was intentionally assessed at more than actual value or in any event at more than 50% of actual value, and that therefore plaintiff was denied due process and equal protection in violation of the 5th and 14th Amendments to the federal Constitution.

■ Defendants advance, as a complete bar to this action, the prohibition contained in 28 U.S.C. § 1341:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

At the hearing on the motion to dismiss, the argument of counsel on this question had to do with whether plaintiff has a "plain, speedy and efficient remedy." However, this need not be decided since it is clear that this prohibition simply does not apply to an action for a refund. Central Steel & Wire Co. v. City of Detroit, 99 F.Supp. 639, 101 F.Supp. 470 (E.D.Mich.1951); Rico Argentine Mining Co. v. Board of County Commissioners, 215 F.Supp. 208 (D.Colo.1963); Annotation, 17 L.Ed.2d 1026 at 1052.

■ Defendants further rely, for dismissal, on the doctrine of prior suit pending. Prior to the filing of the instant action, it appears that plaintiff obtained a writ of certiorari from the Circuit Court of Davidson County and will have the limited review allowed in Tennessee under that writ of the refusal of the State Board of Equalization to afford it relief.[1] Aside from the differ-

---

1. Defendants, in this connection, also point out that plaintiff has filed a suit for a refund, relying on the same grounds as in the instant action, in the Chancery Court of Shelby County, but it appears that that suit was filed on the same day but after the instant action.

ence in the scope of review and the difference in the substantive issues before the Circuit Court of Davidson County and this Court, this suit should not be dismissed since the doctrine of prior suit pending does not apply where the earlier suit is in state court and the later one is in federal court. 1 Am.Jur. 2d, Abatement etc., § 18 at 58.

We come now to the question whether diversity of citizenship is present here, that is, whether the principal place of business of plaintiff is in Tennessee.

Plaintiff, as stated, is a Maryland corporation and it owns and operates a large shopping center in Shelby County in a suburb near Memphis. It is a wholly owned subsidiary of a Maryland parent corporation, which owns the stock of several such subsidiary corporations each of which owns and operates a shopping center. Plaintiff's shopping center here is its only source of revenue. Its resident manager and his secretary, its superintendent, all but possibly two of its eight janitorial employees, and its three nightwatchmen live here. All of its tangible property is located here. At the time suit was filed, all of those employees except the resident manager were paid from a payroll account maintained at a local bank. Broad policy is made by the officers, all of whom live in Maryland; and the general manager, who also has such responsibility for two other shopping centers, lives there but comes here about once a month in carrying out his duties. Rent is paid by tenants to the Maryland office. The officers in Maryland have overall responsibility for leasing and sign the leases, but the resident manager handles details of leasing. Invoices for expenses are sent to Maryland for payment.

■ We conclude that the principal place of business of plaintiff is in Tennessee and that therefore we have no diversity jurisdiction. Bullock v. Wiebe Construction Co., 241 F.Supp. 961 (S.D. Iowa 1965); Mattson v. Cuyuna Ore Co., 180 F.Supp. 743 (D.Minn.1960); Leve v. General Motors Corp., 246 F.Supp. 761 (S.D.N.Y.1965); Kelly v. United States Steel Corp., 284 F.2d 850 (3rd Cir. 1960).

At the hearing on this diversity question, we pointed out to counsel that, even if we determined that diversity is not present, it might well be that plaintiff is nevertheless entitled to press any claim it may have under state law on a theory of pendent jurisdiction. In short, since we determine (as we do herein determine) that plaintiff has stated a claim with respect to which we have federal question jurisdiction, it may be that we have such pendent jurisdiction. Whether we have such jurisdiction is a relatively close question. See: Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Hillsborough Township, etc. v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Wright, Federal Courts 55 (1963). In any event we believe it would be well to consider and decide whether state law authorizes this action for a refund of taxes.

■ Under state law, plaintiff was entitled to and alleges that it has sought a reduction of the assessment of its property to actual value in the County Board of Equalization (T.C.A. § 67–801) and then in the State Board of Equalization (T.C.A. § 67–821) and then, by certiorari, in the Circuit Court of Davidson County (T.C.A. § 27–801 and § 27–821), which last proceeding is now pending. We conclude, as will be seen, that this is the only remedy plaintiff has under state law that could affect its tax and that it may not under such law maintain an action for a refund as it seeks to do here.

Plaintiff, in support of its contention that it may maintain a suit for a refund under state law, relies on T.C.A. § 67–2303 et seq., but these provisions by their terms apply only to "revenue due the state," and it is plaintiff's very theory, as stated in its complaint, that the state has no interest in the tax collected here. Moreover, the cases an-

notated under these provisions support the interpretation that they have no application to county taxes.

Plaintiff more earnestly relies, in this connection, on T.C.A. § 67–2313, which authorizes a suit for refund of "taxes collected by any of the municipalities of this state," contending that a county is a municipality within the meaning of this provision. It is true, as plaintiff contends, that such cases as Nashville, C. & St. L. Ry. v. Marshall County, 161 Tenn. 236, 30 S.W.2d 268 (1930) and Weakley County Municipal Electric System v. Vick, 43 Tenn.App. 524, 309 S.W. 2d 792 (1957) do hold that a county in Tennessee partakes of the characteristics of a chartered municipal corporation. However, the reference in § 67–2313 to "the mayor and board of commissioners or other governing body of such municipality" (there being other forms of city government in Tennessee) and to "the city attorney or other legal officer of such municipality" indicate that the legislature did not have counties in mind in enacting this provision. Moreover, § 67–2313 expressly makes applicable to tax refund claims against "municipalities" those code provisions (§§ 67–2303—67–2308 and §§ 67–2310—67–2312) which have to do with refund claims for state taxes; and § 67–2312 provides that a suit for refund is the exclusive remedy for attacking the validity of the imposition of a state tax. At the same time, the provisions for obtaining relief from county taxes (T.C.A. § 67–801 et seq.) by resort to the County Board of Equalization, etc., as above described are still on the statute books. Lastly, one only has to thumb through the Tennessee Code and its indices to see that the statutes use the word "county" when they mean county and use the word "city" or "town" or "municipality" when they mean city or town.

■ Since state law does not authorize the instant action for a refund, plaintiff's claim for a refund based on a state law cannot be maintained in federal court. 1A Moore's Federal Practice § 0.-317[1] (2nd Ed. 1965). Accordingly, this claim will be dismissed.

As stated, plaintiff contends that its allegation of intentional discrimination is a statement of a claim for relief as a denial of equal protection under the 5th and 14th Amendments and that therefore this Court has general federal question jurisdiction. 28 U.S.C. § 1331. We must therefore consider whether plaintiff has thus stated a claim for relief.[2]

■ At the hearing on the motion to dismiss, a great deal of attention was given to Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254 (1940). In Tennessee, railroad properties are assessed by the Public Service Commission which certifies to each county the assessed value of the railroads' properties in that county. In *Browning,* the railroad contended that it had been denied equal protection because, in spite of the requirement of Tennessee law that all property be assessed at actual value, the county assessors systematically and intentionally assessed non-utility property at much less than actual value while the Commission systematically and intentionally assessed railroad properties at actual value. The Supreme Court, in determining that the railroad had not been denied equal protection, pointed out that the state could constitutionally make reasonable classifications of property for assessment purposes and therefore could require that railroad property be assessed at a higher percentage of value than non-utility property. It further pointed out that Tennessee by actual practice was simply doing that which it could constitutionally do, though its law on its face required otherwise. The Supreme Court also may have placed its decision on the alternative ground that the Supreme Court of Tennessee, from whence

---

2. Plaintiff also alleges that such is a denial of due process. However, we do not understand plaintiff to contend that its

due process contention adds anything to its equal protection contention.

**1374**

the case had come by certiorari, had determined that the railroad had not by evidence overcome the state law presumption that the State Board of Equalization had properly equalized assessments, which was a determination by the Tennessee court that would not be overturned. At the hearing on this motion to dismiss, a great deal of attention was also given to Louisville & N. R. Co. v. Public Service Commission, 389 F.2d 247 (6th Cir. 1968). In that case, which had begun in the federal District Court, the railroad made the same contention as was made in *Browning*. The majority of our Court of Appeals determined that *Browning* was distinguishable, and held that the railroad had been denied equal protection. Our problem, we thought, was whether that which we considered to be the holding in *Browning* (but which the majority of the Court of Appeals apparently believed was *dicta*) was the law in this circuit in view of this later decision by our Court of Appeals. On reflection, however, we do not believe that either of these cases is particularly applicable here; they present a refinement of the problem with which we are not concerned. Our problem is *not* whether there is a denial of equal protection where Tennessee by actual practice places property in different classes for assessment purposes in a manner that the federal Constitution would permit Tennessee law to do but which Tennessee law does not do. Our problem is simpler and more straightforward and that is whether an intentional discrimination in the assessment of plaintiff's property as against other property of the same class constitutes a denial of equal protection. So viewed, the answer is clear; it has long been held, as will be seen, that such discrimination is a denial of equal protection.

At the outset, it should be pointed out that a Tennessee taxpayer can, through the procedure above summarized, seek to have his county assessment reduced to actual value; but to the extent that his complaint is that his property is assessed at a greater percentage of actual value than is other property of the same class, his only remedy is to seek to have the assessment of the other property increased. Carroll v. Alsup, 107 Tenn. 257, 64 S.W. 193 (1901); Mayor and Aldermen of Town of Morristown v. Burke, 207 Tenn. 180, 338 S.W. 2d 593 (1960). Here plaintiff is seeking a refund on the theory that its property, as a result of intentional discrimination, is assessed at a value higher than actual value and in any event is assessed at a higher percentage of actual value than is other property of the same class.

In Hillsborough Township, etc. v. Cromwell, 326 U.S. 620, at 623, 66 S.Ct. 445, at 448, 90 L.Ed. 358, at 363 (1946), it is stated:

"The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. * * * The courts of New Jersey in a long line of decisions have held that a taxpayer who has been singled out for discriminatory taxation may not obtain equalization by reduction of his own assessment. His remedy is restricted to proceedings against other members of his class for the purpose of having their taxes increased." [Citations omitted.]

See also: Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 76 L.Ed. 146 (1931).

We therefore conclude that plaintiff has stated a claim for relief under the equal protection clause of the federal Constitution with respect to which this Court has jurisdiction under 28 U.S.C. § 1331.

Counsel will prepare an order for entry.