ANNA R. DENNIS et al., Appellants,

*v.*

SEARS, ROEBUCK & COMPANY et al., Appellees.

446 S.W.2d 260

(*Nashville,* December Term, 1968.)

Opinion filed October 24, 1969.

GEORGE E. BARRETT and LARRY HELM SPALDING, Nashville, of counsel; BARRETT, CRESWELL & MITCHELL, Nashville, for appellants.

GEORGE F. McCANLESS, Attorney General, and PAUL E. JENNINGS, Assistant Attorney General, Nashville, for the State, and REBER BOULT and EDWIN F. HUNT, Nashville, of counsel.

BOULT, HUNT, CUMMINGS & CONNERS, Nashville, for Sears, Roebuck & Co.

Mr. Justice Humphreys delivered the opinion of the Court.

As the case has been presented to this Court, it involves only one question: Is Tennessee Code Annotated, sec. 47-11-104, unconstitutional, because it violates Article XI, Section 7, of the Tennessee Constitution, which prohibits interest rates in excess of 10% per annum.

In the court below two other questions were presented: (1) Whether the suit was an appropriate one to be maintained as a class action? And, (2) whether the president of the Tennessee State Labor Council, AFL-CIO had such special interest, because some members of the labor organizations might be purchasers of goods under T.C.A. sec. 47-11-104, as would permit him to be a party complainant?

Appellant has abandoned these two issues, not assigning error, briefing, or arguing them.[1] Tennessee Supreme

---

[1] We approve of the pretermission of the assignment of error, brief and argument of the second and third questions. Assignment of error, brief and argument thereon would be of no assistance in settling the real issue, and could serve to distract attention therefrom.

Court Rules, 14, 15; *McDonnell v. Amo,* 162 Tenn. 36, 34 S.W.2d 212 (1931); *State ex rel. v. Retail Credit Men's Assn. of Chattanooga,* 163 Tenn. 450, 43 S.W.2d 918 (1931).

This suit is before the Court on a bill as amended and a demurrer thereto. The bill and amendment aver that appellant, Anna R. Dennis, has an outstanding obligation in the amount of $293.58 owing to appellee, Sears, Roebuck & Co., by reason of a purchase she made from Sears under what is known as a Revolving Charge Account. A copy of the account agreement was attached to the amendment to the bill and is as follows:

## "SEARS REVOLVING CHARGE.

### Agreement

Sears, Roebuck & Co.

In consideration of your selling merchandise to me on Sears Revolving CHARGE ACCOUNT, I agree to the following regarding all purchases made by me or on my Sears Revolving CHARGE ACCOUNT identification:

1. I have the privilege of a 30-day charge account, in which case I will pay the full amount of all merchandise purchased within 30 days from the date of each billing statement.

2. If I do not pay the full amount for all merchandise purchased within 30 days from the date of each billing statement, the following terms shall be in effect:

(A) I will pay the time sale price for each item purchased consisting of:

(1) The cash sale price, and

(2) An amount of time price differential, computed at 1½% of the balance at the beginning of

each month, until the full amount of all purchases and time price differentials thereon are paid in full.

(B) I will pay for the merchandise purchased in monthly instalments which shall be computed according to the following schedule:

| If the Unpaid Balance is: | The Scheduled Monthly Payment Will Be: |
|---|---|
| $ .01-$10.00 | Balance |
| 10.01-100.00 | $10.00 |
| 100.01-150.00 | 15.00 |
| 150.01-200.00 | 20.00 |
| 200.01-250.00 | 25.00 |
| 250.01-300.00 | 30.00 |
| 300.01-350.00 | 35.00 |
| Over $350.00 | $\frac{1}{10}$ of Account Balance |

I will pay each monthly instalment computed according to the schedule as stated above upon the receipt of each statement. If I fail to pay any instalment in full when due, at your option the full balance shall become immediately due.

(C) You are to send me a statement each month which will show the unpaid balance for merchandise purchased, your time price differential computed on the balance at the beginning of the month, and the amount of the monthly instalment coming due.

NOTICE TO BUYER: (a) Do not sign this before you read it or if it contains any blank spaces. (b) You are entitled to an exact copy of the paper you sign. (c) You have the right to pay in advance the full amount due.

ACCEPTED: Anna R. Dennis
 Customer's Signature

SEARS, ROEBUCK AND CO.,
Address Address
by R.M.D. Date 3/27/64"

It was alleged that this agreement is usurious. That Tennessee Code Annotated, sec. 47-11-104, which authorized the agreement violates Article XI, Section 7 of the Tennessee Constitution, in that the time price differential of 1½% of the balance of the account each month would permit a charge of 18% of the account balance, that this charge is interest and so violates Article XI, Section 7, which stipulates that the legislature may not "provide for a conventional rate of interest" in excess of 10% per annum.

Upon appellees' demurrer raising the questions hereinabove stated the Chancellor held the challenged statute to be constitutional and, without discussing the second and third questions, sustained the demurrer in its entirety, and dismissed the suit. Anna R. Dennis appealed and the case is before us on the single issue mentioned. We agree with the Chancellor and affirm his decree.

In considering the issue presented we are governed by certain well-established propositions of law. These propositions are:

█ There is a strong presumption in favor of the constitutionality of acts passed by the Legislature. *Koen v. State,* 162 Tenn. 573, 39 S.W.2d 283 (1931) ; *Joyner v. Priest,* 173 Tenn. 320, 117 S.W.2d 9 (1937) ; *Federal Firefighters of Oak Ridge v. Roane-Anderson Co.,* 185 Tenn. 320, 206 S.W.2d 369 (1947) ; *State ex rel. Gallaher v. Hickman,* 190 Tenn. 310, 229 S.W.2d 495 (1950).

█ Acts of the Legislature cannot be declared unconstitutional merely for reasons of policy. *Nashville, C. &*

*St. L. Ry. v. Marshall County,* 161 Tenn. 236, 30 S.W.2d 268 (1930) ; *Quinn v. Hester,* 135 Tenn. 373, 186 S.W. 459 (1916).

 It has long been the established rule of law in Tennessee that the sale of merchandise, either personal property or land, is not usurious when the sale is made for one price if cash is paid and for a higher price if payment is deferred or if payment is made in future installments. *Garrity v. Cripp,* 63 Tenn. 86 (1874). *First Nat. Bank of Johnson City v. Mann,* 94 Tenn. 17, 27 S.W. 1015, 27 L.R.A. 565 (1894) ; See also *Wilson v. Dealey,* 222 Tenn. 196, 434 S.W.2d 835 (1968).

The decisions of this Court in *Garrity v. Cripp* and the other cases above are in accord with the overwhelming weight of authority in other jurisdictions. *Floyer v. Edwards,* 1 Cowp. 112, 98 Eng. Rep. 995 (K.B. 1774); *Hogg v. Ruffner,* 1 Black (66 U.S.) 115, 17 L.Ed. 38 (1861) ; *Skipworth v. Gibson,* 14 Va. (4 Hen. & M.) 490 (1810) ; *Coleman v. Garlington,* 2 Speers 238 (S.C. 1843) ; *Bass v. Patterson,* 68 Miss. 310, 8 So. 849 (1890) ; *Commercial Credit Company v. Tarwater,* 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437 (1926) ; *Rushing v. Worsham,* 102 Ga. 825, 30 S.E. 541 (1898) ; *Milo Theater Corp. v. National Theater Supply,* 71 Idaho 435, 233 P.2d 425 (1951) ; *Borel v. Living* (La.Appeals), 28 So.2d 392 (1946) ; *Hafer v. Spaeth,* 22 Wash.2d 378, 156 P.2d 408 (1945) ; *Keefe v. Bush & Lane Piano Co.,* 247 Mich. 82, 225 N.W. 585 (1929) ; *Verbeck v. Clymer,* 202 Cal. 557, 261 P. 1017 (1927) ; *Cady L. Daniels, Inc. v. Fenton,* 97 Colo. 409, 50 P.2d 62 (1935) ; *Zazzaro v. Colonial Acceptance Corp.,* 117 Conn. 251, 167 A. 734 (1933) ; *General Motors Acceptance Corp v. Weinrich,* 218 Mo.App. 68, 262 S.W. 425 (1924) ; *Atlas Securities Co. v. Copeland,* 124 Kan. 393,

260 P. 659 (1927) ; *Standard Supply & Hardware Co. v. Christian, etc.,* 183 S.W.2d 657 (Tex.Civ.App. 1944); *Davidson v. Davis,* 59 Fla. 476, 52 So. 139, 28 L.R.A., N.S., 102 (1910) ; *Uni-Serve Corp. of Mass. v. Commissioner of Banks,* 349 Mass. 283, 207 N.E.2d 906 (1965).

In only two states has it been held that time price differential charges are interest and subject to the usury statutes. *Sloan v. Sears, Roebuck & Co.,* 228 Ark. 464, 308 S.W.2d 802 (1957) ; and *Lloyd v. Gutgsell,* 175 Neb. 775, 124 N.W.2d 198 (1963). And in Nebraska this holding of the Nebraska Supreme Court was set aside by an amendment to the Nebraska constitution expressly validating such charges. As for the Arkansas case, it had to be decided as it was, contrary to all of the holdings in the United States, because of the particular language of the Arkansas constitution, which made this result mandatory.

Text authority with virtual unanimity supports the rule in Tennessee and elsewhere that a bona fide credit sale is not usurious when a higher price is charged and paid for a credit sale than for a cash sale. Williston on Contracts (Rev. ed.), Vol. 6, Sec. 1685; Page on Contracts, Vol. 1, 1919-1929 Supp., p. 580; Corbin on Contracts, 1962, Vol. 6A, Sec. 1500; Restatement of Law of Contracts, Sec. 527, Illus. 4; 55 Am. Jur. 338 Usury, Sec. 21.

When our Constitution was adopted it had long been the settled common law rule that the term interest did not apply to the price differential charged on a credit sale. In other words, that where goods were sold for one price for cash and a higher price for credit, the difference charged was not interest. *Floyer v. Edwards,* supra; *Skipworth v. Gibson,* supra; *Greenhow v. Harris,* 20 Va.

472 (1820) ; *Selby v. Morgan,* 30 Va. 577 (1832) ; *Coleman v. Garlington,* supra.

This proposition is discussed in an annotation in 14 A.L.R.3rd 1065, where literally scores of cases sustaining it are annotated.

It would serve no good purpose to extend this opinion by referring in detail to the specific language in the cases cited. The legal basis for these holdings has been summarized in text authority where it is so clearly stated that anyone, it would seem, can understand.

In Williston on Contracts (Rev. ed.), Vol. 6, Section 1685, it is declared in part:

*"Loan or forebearance of money.*

The statute of Anne applied only to a loan or forbearance of money, and in the construction of this statute it was held that where property was sold, even though the contract provided in terms for the payment of a fixed price payable in the future with interest at a greater rate than that allowed by the statute, the transaction was, nevertheless, not usurious since everything that the buyer promised must be deemed consideration for the sale of property, not interest on a loan or forebearance of money. In the United States like statutes have been similarly construed, so that where property is sold the parties may agree that the price, if paid after a certain time, shall be a sum greater by more than legal interest than the price payable at an earlier day; and though the difference between an agreed price for cash and that for credit is in terms stated in the form of interest at greater than the legal rate, the contract is not usurious. * * *"

In 55 Am. Jur., p. 338, Usury, Section 21, the following statement appears:

"A sale of personal property is not a loan or forbearance of money, and is not within the usury laws unless the transaction is but a mere form or device to evade such laws. The owner of property, whether real or personal, has a perfect right to name the price at which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and it is generally held that a credit sale at an advanced price will not constitute usury, however great the difference between the two prices, so long as it appears that the price charged is in fact fixed for the purchase of goods on credit with no intention or purpose of defeating the usury laws. And it is immaterial that the price fixed for the credit sale is arrived at by adding a per cent to the cash price in excess of the legal rate of interest, or that the difference between the cash and credit prices is put in the form of interest on a note given for the purchase price. * * *"

Restatement of the Law of Contracts illustrates the rule under Section 527, as follows:

"4. A sells a chattel to B and B promises to pay $100 therefor within a fort-night or, as an alternative, to pay $110 in 30 days. The bargain is valid although the difference in the price according as it is paid promptly or not, exceeds the highest legal rate of interest on the smaller sum. There is no loan of money." P. 1023.

Appellant concedes that at the common law usury could occur only in connection with either a loan of money or a forbearance of debt. Appellant also concedes that "a credit sale was considered conceptually different

from either a loan or forbearance of debt, and, therefore usury statutes were not applied to it.''

Appellant argues, in spite of this being the law, that there is really no logical difference between interest and the time price differential charge, and that this, and the widespread use of the present day credit sale as contrasted with the nature of sales transactions when the common law rule evolved, together with the usually necessitous condition of the majority of credit buyers, all combine to require this Court, as a mattter of policy to adopt a definition of interest which would include time price differentials.

For obvious reasons this argument must be rejected. It is based solely on grounds that address themselves to the legislature. Moreover it is not at all certain that the policy urged on us is the best policy.

■ Appellant's case depends entirely on the proposition that the legislature could not constitutionally enact T.C.A. sec. 47-11-104. To be successful she must show that interest includes the price increase charged for credit sales. She not only had been unable to do this but, to the contrary, she concedes that at the time of the adoption of our constitution the technical legal meaning of interest was limited to the price paid for the loan of money or the forbearance of debt. It is the settled rule in this state that where a word used in our constitution had a technical judicial meaning established by the common law when it was so used, it must be taken by this Court to have been used in the constitution in that established sense. *McGinnis v. State,* 28 Tenn. 43, 47 (1848); *Jenkins v. Ewin,* 55 Tenn. 456 (1871).

If we cast this rule aside, as we must to follow appellant's argument, then by what rule shall we examine the

words of our constitution? Would it not necessarily follow, if we cast aside the technical judicial common law meaning of words used therein, that we would be equally at liberty to cast aside dictionary definition of other words, and even the popular meaning of words?

Once you start, where do you stop?

We shall stop before we start on any such perilous course.

██ It must always be remembered that the Constitution of Tennessee, while a grant of power to this Supreme Court, is not a grant of power to the legislature, only a limitation of its powers. *Stratton v. Morris,* 89 Tenn. 497, 15 S.W. 87, 12 L.R.A. 70 (1891). So that the legislature has unlimited power to enact laws except as expressly or impliedly restricted by the constitution. *Rushing v. Tennessee Crime Commission,* 173 Tenn. 308, 117 S.W.2d 4 (1938); *Prescott v. Duncan,* 126 Tenn. 106, 148 S.W. 229 (1912); *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A. 1916 F. 177 (1911).

██ A necessary corollary of these propositions is that the courts are not at liberty, ever, to question the wisdom or policy of an act of the legislature. Their duty is to enforce the acts as passed, *Illinois Cent. Railroad Co. v. Wells,* 104 Tenn. 706, 59 S.W. 1041 (1900); *Nashville, C. & St. L. Ry. v. Marshall County,* 161 Tenn. 236, 30 S.W.2d 268 (1930); *Quinn v. Hester,* 135 Tenn. 373, 186 S.W. 459 (1916). In *Leeper v. State,* 103 Tenn. 500, 510-511, 53 S.W. 962, 48 L.R.A. 167 (1899), the principle is reaffirmed that a statute cannot be "invalidated upon some supposed or assumed natural right or equity, upon the general statement that it is opposed to the inherent rights of freemen, nor upon any spirit supposed to per-

vade the constitution, not expressed in words, nor because it is opposed to the genius of a free people, nor upon any general or vague interpretation of a provision beyond its plain and obvious import.''

■ And to this we must add, because we are ourselves bound by the constitution and law, this Court cannot even on valid economical and sociological grounds declare an act of the legislature unconstitutional. It is obvious these considerations address themselves to the legislature alone.

Finally, as to the need to adopt appellant's position we note that the condition against which appellant argues is recognized as legal, and evidently as either desirable or necessary in every state in the union except Arkansas. In consideration of which we are compelled to observe that appellant's contention must not be as logical and as economically and sociologically imperative as she contends—certainly not enough so to cause us to go against the common law, the law of our state, and the history and tradition of this Court since its inception for observance of that law.

■ The appellant's contention is overruled. Tennessee Code Annotated, sec. 47-11-104 is declared to be a constitutional enactment, and judgment shall be entered accordingly.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.