IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 9, 2024 Session

## ALAN C. CARTWRIGHT v. THOMASON HENDRIX, P.C., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-3547-19      Robert E. Lee Davies, Senior Judge**

_____

### No. W2022-01627-COA-R3-CV

_____

Appellants, lawyers and their law firms, appeal the trial court's denial of their petition to dismiss this lawsuit under the Tennessee Public Protection Act. On appeal, we conclude that the trial court erred in concluding that Appellants failed to establish that this claim relates to the protected right to petition. As such, we reverse the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

Lucian T. Pera, J. Bennett Fox, Jr., and John D. Woods, III, Memphis, Tennessee, for the appellants, Justin Edward Mitchell, Mitchell Law Firm, LLC, Jerry Edward Mitchell, Thomason Hendrix, P.C., Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC, and Lewis, Thomason, King, Krieg & Waldrop, PC (Memphis).

H. Thomas Duncan, Nashville, Tennessee, for the appellee, Alan C. Cartwright.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Over a period of more than ten years, the beneficiary of certain family trusts filed a total of seven lawsuits concerning their administration against his sister, as trustee, and others. This is at least the sixth in a series of appeals involving these parties. *See Cartwright v. Jackson Cap.* (*Cartwright I*), No. W2011-00570-COA-R3-CV, 2012 WL 1997803

(Tenn. Ct. App. June 5, 2012); ***Cartwright v. Garner***, 751 F.3d 752 (6th Cir. 2014) [hereinafter "the federal lawsuit"]; ***Cartwright v. Jackson Cap.*** (***Cartwright II***), 478 S.W.3d 596 (Tenn. Ct. App. 2015); ***Cartwright v. Garner*** (***Cartwright III***), No. W2016-01423-COA-R3-CV, 2018 WL 3814632 (Tenn. Ct. App. August 10, 2018); ***Cartwright v. Garner*** (***Cartwright IV***), No. W2016-01424-COA-R3-CV, 2018 WL 4492742 (Tenn. Ct. App. Sept. 19, 2018).[1] Together, we refer to these lawsuits as the "Trust Lawsuits."[2] Having failed to exhaust their fighting spirit in the prior cases against one another, the siblings each filed an action against the attorneys who have represented the brother in the Trust Lawsuits. This case involves the claim of the brother against his own former attorneys. A seventh appeal in which the non-client sister similarly sued her brother's former attorneys is also pending before this Court.[3]

The genesis of this case involved a dispute between siblings Plaintiff/Appellee Alan C. Cartwright and Alice C. Garner over the administration of various trusts benefitting Mr. Cartwright by the trustees, Mrs. Garner and her husband, Alan Garner (together with Mrs. Garner, "the Garners").[4] After over a decade of litigation in which the Garners prevailed at essentially every turn, on August 9, 2019, Mr. Cartwright filed a complaint in the Shelby County Circuit Court ("the trial court") for damages against his own former attorneys, Jerry E. Mitchell[5] and Justin E. Mitchell, their former law firm,[6] and Justin Mitchell's current law firm, Mitchell Law Firm, LLC (collectively, "Appellants"). A First Amended Complaint was filed on December 23, 2019.

The First Amended Complaint alleged that in 2005, Jerry Mitchell agreed to represent Mr. Cartwright in a lawsuit filed by his mother, Betty Goff Cartwright. The attorney contract provided that Jerry Mitchell would be entitled to a contingency fee of one-third of the gross proceeds received or recovered on behalf of Mr. Cartwright. The lawsuit named Mr. Cartwright, Mrs. Garner, and other persons as defendants and sought to dismantle some of the financial planning that had been put into place by Mrs. Cartwright's late husband. In the course of this representation, Mr. Cartwright, by and through Mr. Mitchell, filed a cross-claim against the other defendants, essentially joining in his mother's claims. Mrs. Cartwright died while the matter was pending, and her claims were settled by her surviving spouse and dismissed. The cross-claim, however, remained

---

[1] Not all of the lawsuits resulted in appeals.

[2] More details concerning the Trust Lawsuits can be found by reviewing the listed Opinions.

[3] *See **Garner v. Thomason Hendrix, P.C., et al.***, No. W2022-01636-COA-R3-CV. By order of March 2, 2023, the two appeals were consolidated only such that oral argument was held on the same docket before the same panel. An Opinion reversing the trial court in the companion case is being filed contemporaneously with this Opinion.

[4] Because of the procedural posture of this appeal, we take the facts from the complaint.

[5] After the complaint was filed, Jerry Mitchell died. His son was appointed as his personal representative and was substituted as a party.

[6] The named law firms were Thomason Hendrix, P.C. and Lewis, Thomason, King, Kreig & Waldrop, P.C., d/b/a Lewis Thomason.

pending, and would be supplemented by five additional lawsuits involving the trusts filed by Mr. Cartwright, by and through Jerry Mitchell, over the next fourteen years.[7] During this time, Justin Mitchell, Jerry Mitchell's son, also worked on the matter. The damages sought in these lawsuits ballooned from $10 million to $120 million.

Each of the Trust Lawsuits was resolved in favor of the Garners and either affirmed on appeal or not appealed. In general, the courts held that the trust documents were valid, that the trustees had followed the trust documents, and that Mr. Cartwright had received all of the distributions to which he was entitled.[8] In many of the cases, the Garners were awarded substantial attorney's fees. *See* ***Cartwright II***, 478 S.W.3d at 628 (following a remand in ***Cartwright I***, affirming summary judgment in favor of the Garners, resulting in the dismissal of all claims by Mr. Cartwright, and affirming the trial court's award of attorney's fees); ***Cartwright III***, 2018 WL 3814632, at *3 (affirming the dismissal of Mr. Cartwright's complaint and awarding attorney's fees against him personally); ***Cartwright IV***, 2018 WL 4492742, at *9 (same). According to the Garners, there was no reasonable basis for the filing of any lawsuits after the federal lawsuit in which Jerry Mitchell acknowledged that further lawsuits would be time-barred.

The First Amended Complaint further alleged that Mr. Cartwright was an unknowing participant in this scheme by Appellants.[9] Specifically, Mr. Cartwright alleged that he had testified that he did not know how many lawsuits had been filed, that he did not understand the legal documents, that he did not know that the courts had ruled he had received more than what he was entitled to, and that he had no recollection of being assessed nearly $400,000.00 in attorney's fees. The First Amended Complaint further alleged that Jerry Mitchell made false statements to Mr. Cartwright and refused to allow Mr. Cartwright to communicate with Mrs. Garner. The siblings were finally able to communicate in August 2015, at which point, Mr. Cartwright finally learned the results of his various lawsuits.

According to the First Amended Complaint, Jerry and Justin Mitchell's false statements "were intended to persuade Mr. Cartwright, through false hope and unreasonable and misleading promises of multimillion dollar financial windfalls, to continue to perpetuate meritless litigation for their own gain with the hope that one of the lawsuits would eventually pay off in the form of a contingency-fee award for them." In the alternative, the Mitchells were "stringing Mr. Cartwright along" in the hope that the statute

---

[7] Mr. Cartwright alleged that Appellants were involved in another lawsuit by "ghost" writing a complaint on his behalf. According to the instant complaint, that lawsuit is still pending, but Appellants do not represent Mr. Cartwright.

[8] In fact, Mr. Cartwright had received over $1.3 million more than what he was entitled to receive under the trust documents as written.

[9] As previously discussed, the Garners filed a companion case against Appellants alleging that they were also damaged by Appellants' tortious conduct. *See* ***Garner v. Thomason Hendrix, P.C., et al.***, No. W2022-01636-COA-R3-CV.

of limitations on any possible malpractice claim would expire. Mr. Cartwright further alleged that Jerry Mitchell pressed Mr. Cartwright to continue the Trust Lawsuits by threatening him with massive legal bills if the lawsuits were terminated or Appellants dismissed. As the First Amended Complaint explained, the Mitchells' "continued pursuit of repetitive lawsuits on behalf of Mr. Cartwright seeking multimillion dollar judgments was for their own, personal financial gain and not in the best interests of their own client, Mr. Cartwright." This included advising Mr. Cartwright to "make outrageous and patently unrealistic settlement demands, which were for [Appellants'] own collective personal financial gain and were not in the best interests of Mr. Cartwright." According to Mr. Cartwright, Appellants' actions in their own self-interests caused him to be subject to personal liability for attorney's fees and costs in *Cartwright III* and *Cartwright IV*. He therefore asked for "all damages and . . . all remedies he is entitled to under applicable law for the awards" in those cases, including an award of compensatory damages of $5,000,000.00 and punitive damages of $500,000.00 due to Appellants' reckless conduct.

On December 23, 2019, Appellants filed a motion to dismiss Mr. Cartwright's complaint for failure to state a claim upon which relief could be granted, the expiration of the statute of limitations, and judicial and equitable estoppel. Mr. Cartwright responded in opposition on May 31, 2022.

Mr. Cartwright was then permitted to file a Second Amended Complaint in the summer of 2022. In the Second Amended Complaint, Mr. Cartwright generally alleged that the Mitchells owed a duty to Mr. Cartwright to keep him informed about the status of his pending cases and to deal fairly with him. Instead of working in Mr. Cartwright's interests, however, Appellants undertook a common goal to "'extort' money from the trust and other related entities—which they apparently saw as the goose (geese) that lay(s) golden eggs— via continued litigation in hopes of obtaining a large and unjustified contingency fee of one-third of any settlement from any of those lawsuits." Mr. Cartwright further alleged that the Mitchells failed to keep him reasonably informed, concealed information from him, encouraged him to pursue the lawsuits, and even took Mr. Cartwright out to "celebrate" how well the lawsuits were going, all the while acknowledging to the federal court that the lawsuits were time-barred. As a result of the dismissed cases, personal liability for attorney's fees and costs was imposed on Mr. Cartwright, causing him injury. The Second Amended Complaint increased the request for damages to $12,000,000.00 in compensatory damages and $7,000,000.00 in punitive damages.

On July 22, 2022, Appellants filed a motion to dismiss the Second Amended Complaint, raising generally the same arguments as their prior motion. On the same day, Appellants also filed a petition to dismiss Mr. Cartwright's complaint on the basis of Tennessee's anti-SLAPP statute,[10] the Tennessee Public Participation Act ("TPPA").

---

[10] "The term 'SLAPP' stands for 'strategic lawsuits against public participation,' meaning lawsuits which might be viewed as 'discouraging the exercise of constitutional rights, often intended to silence

Therein, Appellants argued that Mr. Cartwright's complaint against them was filed in response to and was based on Appellants' exercise of their constitutional right to petition, which was protected by the TPPA. Thus, Appellants asserted that under the TPPA, the burden shifted to Mr. Cartwright to establish a prima facie case—a burden that Mr. Cartwright could not meet due to the expiration of the statute of limitations and estoppel.

Mr. Cartwright responded in opposition to both Appellants' motion to dismiss and petition to dismiss on August 22, 2022. Mr. Cartwright argued, inter alia, that the TPPA was unconstitutional as applied to Mr. Cartwright's claims because it was enacted after the claims accrued.[11] Mr. Cartwright further argued that the TPPA was simply not implicated in this case because the torts alleged did not involve Appellants' right to petition, but instead Mr. Cartwright's own right to petition. Mr. Cartwright therefore asserted that Appellants had no standing under the TPPA, that their petition should be dismissed as frivolous, and that he should be awarded attorney's fees.

After each party filed additional responses, the trial court entered an order on October 21, 2022, denying the petition to dismiss under the TPPA. Therein, the trial court characterized the parties' arguments as follows:

> In this case, [Appellants] claim they are entitled to the protection of the TPPA based upon the right to petition. [Appellants] contend that Mr. Cartwright's lawsuit is in direct response to the multiple lawsuits which they filed on his behalf. In his response, [Mr. Cartwright] points out that [Appellants] were not representing themselves; instead, they were supposed to have been representing the best interest of Mr. Cartwright. It therefore follows that it was Mr. Cartwright's right to petition which was being exercised in the prior lawsuits.

Based on these arguments, the trial court concluded that it agreed "with the general proposition that an attorney who files pleadings or makes statements on behalf of a client in court is exercising the right to petition." But the trial court explained that the dispositive question was whether Appellants "while they were filing lawsuits on behalf of Mr. Cartwright were actually exercising [Appellants'] right to petition." The trial court then cited law from California and Texas to hold that an action by a client against his or her own attorneys "is not being brought to chill the valid exercise of the constitutional rights of

---

speech in opposition to monied interests rather than to vindicate a plaintiff's right.'" ***Nandigam Neurology, PLC v. Beavers***, 639 S.W.3d 651, 657 (Tenn. Ct. App. 2021) (quoting Todd Hambidge et al., *Speak Up. Tennessee's New Anti-SLAPP Statute Provides Extra Protections to Constitutional Rights*, 55 Tenn. B.J., September 2019, at 14, 14, 15).

[11] The State of Tennessee filed a motion to intervene as to the constitutional challenge. Therein, the State noted that the trial court should not address the constitutionality of the statute unless necessary. In other words, if the trial court agreed with Mr. Cartwright that the TPPA was inapplicable, it should not address the constitutional challenge. As discussed, *supra*, that is exactly what occurred in this case.

freedom to petition." In other words,

> Applying the above principles to the TPPA, the Court finds that while an attorney representing a client in a judicial proceeding may qualify as a party who was exercising the right to petition pursuant to Tenn. Code Ann. § 20-17-104(a), an attorney who is being sued for legal malpractice and fraud by his former client can never satisfy the first prong of the test [i.e., that the challenged action is a right protected by the statute] and therefore has no standing to file a petition pursuant to the TPPA.

So the trial court denied Appellants' petition to dismiss the complaint under the TPPA. The trial court, however, denied Mr. Cartwright's request for attorney's fees under the TPPA. This appeal as of right followed. *See* Tenn. Code Ann. § 20-17-106 ("The court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals.").

## II. ISSUES PRESENTED

Appellants raise the following issues, which are taken from their brief:[12]

1. Whether the trial court erred in concluding that [Appellants'] conduct is not protected by the Tennessee Public Participation Act.
2. Whether the trial court erred in failing to apply the burden-shifting analysis of the Tennessee Public Participation Act.
3. Whether [Mr.] Cartwright's cause of action for legal malpractice is barred by the one-year statute of limitations.
4. Whether [Mr.] Cartwright's cause of action for legal malpractice is barred by judicial and equitable estoppel.

In the posture of appellee, Mr. Cartwright asserts that the trial court's ruling should be affirmed because the TPPA does not apply to legal malpractice claims,[13] and that he should

---

[12] Appellants also filed a motion to strike Mr. Cartwright's supplemental authority on the ground that it contained improper argument in violation of the rules of appellate procedure. *See* Tenn. R. App. P. 27(d) ("[T]he letter shall without argument state the reasons for the supplemental authority."). Although we agree that Mr. Cartwright's filing violates Rule 27, given the resolution of this appeal, *infra*, we respectfully deny the motion to strike.

[13] In his brief, Mr. Cartwright also adopts and incorporates the arguments made by the Garners in the companion to this appeal pursuant to Rule 27 of the Tennessee Rules of Appellate Procedure. Rule 27(j) provides that in "cases involving multiple parties, including cases consolidated for purposes of the appeal," a party may join in the brief of another party. In this case, however, the instant matter and the companion case were not consolidated for purposes of briefing. As such, it does not appear that Mr. Cartwright was entitled to join in the brief of the Garners in the companion case. Regardless, we note that the arguments of the Garners were fully considered and addressed in the companion case; like in this case, we have held that Appellants met their burden under the first prong of the TPPA. Consequently, the Garners' arguments are

be awarded sanctions for defending against a frivolous appeal.[14]

## III. STANDARD OF REVIEW

The appeal involves the denial of a petition to dismiss under the TPPA. In a typical case, the denial of a motion to dismiss presents an issue of law, which we review de novo with no presumption of correctness. *Ultsch v. HTI Mem'l Hosp. Corp.*, 674 S.W.3d 851, 860 (Tenn. 2023). In our review of a typical motion to dismiss, we accept the factual allegations of the complaint as true. *Id.* To the extent that this case also requires that we construe the TPPA, our review is similarly de novo with no presumption of correctness. *Nandigam Neurology, PLC*, 639 S.W.3d at 657. As we have explained,

> The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. We begin by reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear. When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning.

*Id.* (internal citations and quotation marks omitted) (citing *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018)).[15]

## IV. ANALYSIS

In this appeal, we must determine whether the trial court erred in denying Appellants' petition to dismiss the complaint on the basis of the TPPA. The TPPA provides that "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104(a). This case involves only the right to petition. The exercise of the right to petition is defined as follows:

> "Exercise of the right to petition" means a communication that falls within the protection of the United States Constitution or the Tennessee Constitution and:
>> (A) Is intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other

---

likewise unsuccessful when applied to the case-at-bar.

[14] In the event that this Court rules that the TPPA does apply, Mr. Cartwright asserts that the case should be remanded to the trial court for consideration of his constitutional challenge.

[15] At various points, the parties also characterize the issues in this case as involving standing. The question of whether a party has standing is also a question of law, which we likewise review de novo. *Massengale v. City of E. Ridge*, 399 S.W.3d 118, 123 (Tenn. Ct. App. 2012) (citing *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005)).

governmental body; or

(B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body . . . .

Tenn. Code Ann. § 20-17-103(4).

If the petitioning party meets their burden to "make a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the . . . right to petition," then "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(a), (b). Additionally, "the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). When considering a petition filed under the TPPA, the court may consider "supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d). If an action is dismissed based on a TPPA petition, the court "shall award to the petitioning party . . . [c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses" and other relief "necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated." Tenn. Code Ann. § 20-17-107(a). If, however, the court finds that the petition was frivolous or filed solely for purposes of delay, the court may award costs and reasonable attorney's fees to the party opposing the TPPA petition. Tenn. Code Ann. § 20-17-107(b).

In this case, Appellants filed a petition for dismissal under the TPPA, arguing that Mr. Cartwright's action was based on, related to, or in response to their exercise of the right to petition and that it should be dismissed. *See* Tenn. Code Ann. § 20-17-105(a). In support of their contention that the trial court erred in denying their petition to dismiss, Appellants note that the TPPA should be construed broadly and that their actions in filing lawsuits on behalf of their client should be protected by the TPPA. *See* Tenn. Code Ann. § 20-17-102 ("This chapter . . . shall be construed broadly to effectuate its purposes and intent."). Moreover, Appellants argue that Mr. Cartwright's lawsuit is not "about malpractice" but rather an "abus[e of] the judicial system to compensate a litigant for the cost of their litigation expenses against their attorneys solely on the basis of the attorney's exercise of their professional duty; petitioning the courts on behalf of their clients." (Footnote omitted). And Appellants assert that this attack was "plainly coordinated" with the companion case filed by the Garners.

Although Tennessee's anti-SLAPP statue was enacted relatively recently and there is not an abundance of Tennessee law on this subject, it is not a statutory anomaly. In fact, as of 2022, at least thirty-one states have enacted anti-SLAPP legislation. Gleisy Sopena, *Attorney-Fee Shifting Is the Solution to Slapping Meritless Claims Out of Federal Courts*,

16 FIU L. Rev. 833, 835 (2022) (citing Austin Vining & Sarah Matthews, *Overview of Anti-SLAPP Laws*, Reps. Comm. for Freedom of the Press, https://www.rcfp.org/ introduction-anti-slapp-guide/ (last visited Feb. 3, 2022)); *see also* Caitlin E. Daday, *(Anti)-SLAPP Happy in Federal Court?: The Applicability of State Anti-SLAPP Statutes in Federal Court and the Need for Federal Protection Against Slapps*, 70 Cath. U.L. Rev. 441, 442 (2021) (noting that the District of Columbia and Guam have also enacted anti-SLAPP statutes). We may therefore consider the decisions of other states in order to interpret the TPPA to the extent that their statutes are similar to our own. *See Reiss v. Rock Creek Constr., Inc.*, No. E2021-01513-COA-R3-CV, 2022 WL 16559447, at *8 (Tenn. Ct. App. Nov. 1, 2022) (noting that while "decisions from other state courts are merely persuasive authority and not binding on this Court" we could consider "other states' decisions respecting similar anti-SLAPP statutes" (citation omitted)).

While only a few jurisdictions have considered this question, their decisions are informative. For example, the Texas Supreme Court was recently presented with this issue in *USA Lending Group, Inc. v. Winstead PC*, 669 S.W.3d 195 (Tex. 2023). In that case, the plaintiff brought a legal malpractice action against its former law firm related to the firm's failure to request monetary damages in a motion for default judgment. *Id.* at 198. The law firm responded that the claim was barred by the applicable version of Texas's anti-SLAPP law, the Texas Citizen's Participation Act. *Id.* at 199. The trial court denied the motion, but the Texas Court of Appeals reversed, concluding that the basis of the client's lawsuit was an "alleged defective communication" in a judicial proceeding, such that Texas's anti-SLAPP law applied. *Winstead PC v. USA Lending Grp., Inc.*, 664 S.W.3d 384, 392 (Tex. Ct. App. 2021) (citing *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 579 (Tex. Ct. App. 2019) (concluding that claim that an attorney failed to plead an affirmative defense was covered by the Texas anti-SLAPP law)), *rev'd*, 669 S.W.3d 195 (Tex. 2023).

Although the Texas Supreme Court granted the plaintiff's application for review, it did not resolve the question of whether the plaintiff's claim fell within the ambit of the applicable version of the Texas anti-SLAPP statute. Instead, the Texas Supreme Court avoided the question of whether the communication fell within the ambit of the statute by concluding that the plaintiff met the second prong of the anti-SLAPP burden-shifting analysis. As the court explained,

> Because we conclude that [the plaintiff] has adduced sufficient prima facie evidence to support its malpractice claim, we need not determine whether its legal action was based on [the law firm's] exercise of the right to petition. We express no views on that aspect of the court of appeals' opinion.

*USA Lending Group*, 669 S.W.3d at 300.

The *USA Lending Group* decision, however, was not the final say on this issue in

Texas. Instead, on September 1, 2023, the Texas anti-SLAPP statute was amended to specifically provide that it would not apply to "a legal malpractice claim brought by a client or former client." 2023 Tex. Sess. Law Serv. Ch. 804 (H.B. 527) (2023). So then, the Texas Legislature resolved any lingering question as to the applicability of its anti-SLAPP statute to legal malpractice actions with specific language exempting legal malpractice claims by clients or former clients from the ambit of the act.

California also appears to be one of the few jurisdictions in which this issue has been well litigated. One of the first cases considering this issue was ***Jespersen v. Zubiate-Beauchamp***, 114 Cal. App. 4th 624, 7 Cal. Rptr. 3d 715 (Cal. Ct. App. 2003). In that case, several clients sued their former attorneys for litigation-related legal malpractice. ***Id.*** at 627, 7 Cal. Rptr. 3d at 716. The attorneys responded with a motion to strike the complaint based on California's anti-SLAPP statute, which the trial court denied. ***Id.*** at 628, 7 Cal. Rptr. 3d at 717.

The California Court of Appeals affirmed the decision of the trial court. In reaching this decision, the court first looked to the complaint, which alleged that the attorneys failed to timely respond to discovery and failed to comply with the trial court's discovery orders. ***Id.*** a 631, 7 Cal. Rptr. 3d at 720. In the court's view, these actions or inactions "did not consist of any act in furtherance of anyone's right of petition or free speech, but appellants' negligent *failure* to do so on behalf of their clients." ***Id.*** The court further rejected the attorneys' claim that the evidence of their alleged malpractice, a written statement filed in a judicial proceeding, was protected by the right of petition. Instead, the court held that the legal malpractice claim was not based on that written statement, "but [on] their failure to comply with a discovery statute and two court orders to do so." ***Id.*** at 632, 7 Cal. Rptr. 3d at 721. The court further held that it "reject[ed]" the attorneys' "attempt to turn garden-variety attorney malpractice into a constitutional right." ***Id.***

A number of cases have followed the logic of ***Jespersen***, mostly inside California. For example, in ***Kolar v. Donahue, McIntosh & Hammerton***, 145 Cal. App. 4th 1532, 52 Cal. Rptr. 3d 712 (Cal. Ct. App. 2006), the California Court of Appeals appeared to expand the holding in ***Jespersen***, explaining:

> We agree with ***Jespersen's*** conclusion that "garden variety" attorney malpractice is not a constitutional right, but we cannot fully subscribe to the court's application of the principle articulated. ***Jespersen*** implies that an attorney may invoke the protection of the anti-SLAPP statute against a malpractice claim where the alleged malpractice was committed in connection with petitioning activity, such as the filing of a pleading, but not when the attorney fails to act, such as failing to respond to discovery or court orders. Under this logic, the anti-SLAPP statute would apply to a malpractice claim alleging the attorney filed an answer omitting a critical defense, but not where the attorney failed to file an answer at all. In the former case,

- 10 -

however, the malpractice claim arises not from the filing of the answer, but from the attorney's failure to provide competent legal representation. That the malpractice claim was triggered by the filing of the defective pleading does not upset the basic principle that attorney malpractice is not a protected right.

*Id.* at 1539, 52 Cal. Rptr. 3d at 717–18.

The court reached this result by noting that California's anti-SLAPP law requires that the claim must "aris[e] from" an act in furtherance of the right to petition, and its purpose is to stop lawsuits that are brought to chill the valid exercise of constitutional rights. *Id.* at 1539, 52 Cal. Rptr. 3d at 718 (quoting Cal. Civ. Proc. Code § 425.16). On the other hand,

[a] malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously. This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect.

*Id.* at 1540, 52 Cal. Rptr. 3d at 718. Because the complaint alleged that the attorneys failed to exercise reasonable care and skill in the representation, regardless of the fact that a complaint had been filed in the course of the representation, the court held that it was a garden-variety legal malpractice claim that did not qualify for anti-SLAPP protection. *Id.*

California courts have continued to apply this reasoning in more recent cases. *See, e.g.*, **Yeager v. Holt**, 23 Cal. App. 5th 450, 457, 232 Cal. Rptr. 3d 693, 698 (2018) ("[W]e find it difficult to see how suing an attorney for malpractice, breach of contract, and using a client's name or likeness for commercial purposes, attacks expressive activity for anti-SLAPP purposes . . . . The cases cited by the trial court—and *many* others—hold that a typical attorney malpractice suit is not subject to the anti-SLAPP procedures.") (collecting cases); **Finato v. Keith Fink & Assocs.**, No. 2:16-CV-06713-RGK-AJW, 2017 WL 10716999, at \*3 (C.D. Cal. May 5, 2017) ("It is well established that the anti-SLAPP statute does not apply to claims of attorney malpractice." (quotation marks omitted) (citing **Chodos v. Cole**, 210 Cal. App. 4th 692, 702, 148 Cal. Rptr. 3d 451, 457 (Cal. Ct. App. 2012), *as modified* (Nov. 7, 2012))); *see also* **PrediWave Corp. v. Simpson Thacher & Bartlett LLP**, 179 Cal. App. 4th 1204, 1227, 102 Cal. Rptr. 3d 245, 263 (Cal. Ct. App. 2009) (holding that "clients' causes of action against attorneys based upon the attorneys'

acts on behalf of those clients . . . categorically are not being brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition" (quotation marks and citation omitted)). And at least one other state court has expressly considered California precedent to come to a similar conclusion under its own anti-SLAPP statute. *See* ***Deep Photonics Corp. v. LaChapelle***, 282 Or. App. 533, 546–47, 385 P.3d 1126, 1135 (Or. Ct. App. 2016) ("[P]laintiffs' claims 'arise[] out of' [the defendant attorney's] *failure* to give competent legal advice to [the plaintiff], which is not an act in furtherance of the right to petition. In other words, plaintiffs' claim is not based on [the defendant attorney's] act of advising [the plaintiff] to bring a lawsuit; it is based on [the attorney] not competently representing [the plaintiff's] interests when he did so." (quoting Or. Rev. Stat. Ann. § 31.150(2)) (citing ***Chodos***, 210 Cal. App. 4th at 705, 148 Cal. Rptr. 3d at 460; ***Kolar***, 145 Cal. App. 4th at 1540, 52 Cal. Rptr. 3d at 718)). In his brief, Mr. Cartwright argues that the above California precedent should be applied to the TPPA and the trial court's ruling should be affirmed.[16]

The trial court's reasoning falls most in line with the California and Oregon

---

[16] In a different section of his appellate brief, Mr. Cartwright appears to argue that notwithstanding the California precedent that attorneys representing clients are protected by anti-SLAPP statutes, *see* ***PrediWave Corp.***, 179 Cal. App. 4th at 1228, 102 Cal. Rptr. 3d at 263 (holding that the California anti-SLAPP statute "protect[s] qualifying statements made or conduct undertaken by a person on another person's behalf against a cause of action by a third person"), the TPPA does not protect Appellants because they were merely representatives for Mr. Cartwright and not asserting their own right to petition in the Trust Lawsuits. Mr. Cartwright reiterated this argument in a supplemental authority to this Court, arguing that the ability to practice law is a privilege rather than a right. On this issue, the trial court specifically ruled the opposite—that it "agree[d] with the general proposition that an attorney who files pleadings or makes statements on behalf of a client in court is exercising the right to petition." Thus, Mr. Cartwright is asserting that the trial court erred in finding any constitutional right to petition for attorneys that would be protected by the TPPA. But Mr. Cartwright did not designate this alleged error as an issue on appeal, and he only made this argument in the context of his request for attorney's fees incurred on appeal and in his supplemental authority. This court, however, does not "search[] for hidden questions" in briefs and only considers issues properly designated on appeal. ***Hodge v. Craig***, 382 S.W.3d 325, 334 (Tenn. 2012); *see also* ***Forbess v. Forbess***, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that an appellee can waive an argument that it fails to properly raise when it is seeking affirmative relief from the trial court's ruling). So we conclude that this argument was not properly raised in this appeal.

Moreover, as discussed more fully in the companion case, no party to these appeals has cited any case decided under an anti-SLAPP statute wherein the court held that attorneys have no standing when the suit relates to petitions filed on behalf of a client. We concede that, outside the TPPA context, courts have held that while the right to petition does not extend to attorneys representing clients, "[w]hen the lawyers' own expressive interests align with [a client's First Amendment] rights, the lawyers themselves may have a cognizable First Amendment interest in pursuing the litigation." ***Powers v. Cnty. of Suffolk***, No. CV 15-5116, 2017 WL 2465168, at *2 (E.D.N.Y. June 6, 2017) (citing ***Jacoby & Meyers, LLP v. Presiding Justs. of the First, Second, Third & Fourth Dep'ts, App. Div. of the Sup. Ct. of N.Y.***, 852 F.3d 178, 187 (2d Cir. 2017) (involving a prohibition on non-lawyer investment in law firms)). Of course, in this case, Mr. Cartwright alleges that it is Appellants' own interests that led them to pursue the allegedly frivolous litigation against the Garners, with Mr. Cartwright as essentially an unknowing patsy to their scheme. So then, the allegations of this particular case appear to meet even this heightened requirement.

holdings, as it ruled that a malpractice plaintiff such as Mr. Cartwright does not sue because the attorney petitioned on his or her behalf, but because "the attorney did not competently represent the client's interest while doing so." (quoting *Loanvest I. LLC v. Utrecht*, 235 Cal. App. 4th 496, 501, 185 Cal. Rptr. 3d 385, 390 (Cal. Ct. App. 2015)). Appellants assert, however, that the trial court erred in considering California law in interpreting the TPPA because its anti-SLAPP statute is substantially different from our statute.

We agree. In relevant part, the California anti-SLAPP statute applies to "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution[.]" Cal. Civ. Proc. Code § 425.16(b)(1). This language was central to the California Court of Appeals' conclusion that a legal malpractice claim did not qualify. *See, e.g.*, *Kolar*, 145 Cal. App. 4th at 1537, 52 Cal. Rptr. 3d at 716 (noting that the "'arising from' requirement is not always easily met" (citing *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66, 52 P.3d 685, 693 (2002))); *cf.* *Deep Photonics*, 282 Or. App. at 547, 385 P.3d at 1135 (relying on the same language in the Oregon anti-SLAPP statute).

The language of the TPPA, however, is broader in that it applies to an action that "is based on, relates to, or is in response to that party's exercise of the . . . right to petition[.]" Tenn. Code Ann. § 20-17-105(a). "This Court presumes that the General Assembly used each word in a statute deliberately, and that the use of each word conveys a specific purpose and meaning." *State v. Strode*, 232 S.W.3d 1, 11 (Tenn. 2007) (noting that "we must give effect to every word, phrase, clause, and sentence in constructing a statute" (quoting *State v. Jennings*, 130 S.W.3d 43, 46 (Tenn. 2004))). The use of the phrase "relates to" in particular indicates the TPPA's wide reach, as the term "relate" can be defined as expansively as "having to do with[.]" *Relate*, *Webster's New World College Dictionary* (5th ed. 2014).

As such, the TPPA more closely resembles the version of the Texas anti-SLAPP statute that existed prior to more recent amendments. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (2019) (applying to an action that "is *based on* or is *in response to* a party's exercise of the right of free speech, right to petition, or right of association or *arises from* any act of that party in furtherance of the party's communication or conduct" (emphasis added)), *with* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (2018) (applying to an action that is "is based on, *relates to*, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" (emphasis added)). And of course, while the Texas Supreme Court has declined to address this issue, the Texas Court of Appeals has held that the pre-amendment version of the Texas anti-SLAPP statute would apply to a legal malpractice action based on its plain language. *See Brown Sims*, 594 S.W.3d at 577–79 ("Thus, for the [the 2018 Texas anti-SLAPP statute] to apply to this case, the claim brought against [the lawyers] need only *relate to* their exercise of the right to petition or the right of free speech"). Unlike Texas, however, our General Assembly has not yet chosen to expressly exclude legal malpractice actions by clients or former clients

from the TPPA's ambit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(13) (2023).[17]

Appellants also argue that the trial court's focus on whether Mr. Cartwright's lawsuit was of the type that would chill petitioning activity was misplaced. As previously discussed, the trial court relied on reasoning from the California courts that a legal malpractice suit does not chill petitioning activity, but instead alleges that the attorney did not competently represent the client's interest. Thus, rather than chilling the exercise of protected rights, a legal malpractice action "encourages the attorney to petition competently and zealously." ***Loanvest***, 235 Cal. App. 4th at 504, 185 Cal. Rptr. 3d at 390 (citing ***Chodos***, 210 Cal. App. 4th at 702, 148 Cal. Rptr. 3d. at 457).

As Appellants point out, however, the stated purpose of the TPPA is different than California's anti-SLAPP statute. Specifically, California's anti-SLAPP statute states that it was enacted due to "a disturbing increase in lawsuits brought *primarily* to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a) (emphasis added). Furthermore, the California statute provides that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." ***Id.*** Based on this language, the California courts have held that a lawsuit that does not operate to chill the exercise of protected rights does not come within the ambit of the statute. *See **Loanvest***, 235 Cal. App. 4th at 504, 185 Cal. Rptr. 3d at 390 (citing ***Chodos***, 210 Cal. App. 4th at 702, 148 Cal. Rptr. 3d. at 457).

In contrast, the stated purpose of the TPPA is "to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. Thus, the TPPA does not expressly speak in terms of the chilling effect of a lawsuit. Nor does it contain any indication that the TPPA should be limited only to those lawsuits whose "primar[y]" aim is to chill constitutional rights. Accordingly, the fact that other courts have held that a legal malpractice case does not have the same chilling effect as other types of lawsuits is not dispositive of the scope of the TPPA or its application to this particular case.

Moreover, even the language employed by the California courts in explaining that a legal malpractice case is not governed by the California anti-SLAPP statute suggests that such a claim would be governed by the more expansive language of the TPPA. Again, the

---

[17] "[A] change in the language of a prior statute presumably connotes a change in meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 256 (2012) Thus, the fact that the Texas Legislature included language specifically exempting legal malpractice actions when it amended its anti-SLAPP statute suggests that the pre-amendment statute was properly interpreted as applying to such actions.

California courts held that a legal malpractice case does not chill protected activities, but only encourages attorneys "to petition competently and zealously." *Loanvest*, 235 Cal. App. 4th at 504, 185 Cal. Rptr. 3d at 390 (citing *Chodos*, 210 Cal. App. 4th at 702, 148 Cal. Rptr. 3d. at 457). While it is arguable that an action which encourages an attorney to essentially petition more competently does not arise from the exercise of the right to petition, such an action certainly "relates to" the act of petitioning. Tenn. Code Ann. § 20-17-105(a). So then, even accepting the California courts' characterization of the purpose of a legal malpractice claim, it appears to fall within the broad ambit of the TPPA. *See* Tenn. Code Ann. § 20-17-105(a) (noting that the TPPA "shall be construed broadly to effectuate its purposes and intent").

Obviously, legal malpractice claims originate in the common law. However, the Tennessee General Assembly has plenary power to alter the common law, subject only to constitutional limitations.[18] *Ultsch v. HTI Mem'l Hosp. Corp.*, 674 S.W.3d 851, 860–61 (Tenn. 2023) (quoting *Hodge v. Craig*, 382 S.W.3d 325, 338 (Tenn. 2012)). While we presume that the Tennessee General Assembly did not intend to change the common law, "[w]hen the General Assembly has enacted statutes that clearly and definitively set boundaries on rights, obligations, or procedures, it should be left to the legislature to change those boundaries and to define new ones." *Id.* (internal quotation marks and ellipses omitted) (quoting *Hodge*, 382 S.W.3d at 338).

As applied to this case, the TPPA does not abrogate Mr. Cartwright's legal malpractice claim. Instead, the TPPA provides a procedural mechanism for "the early disposition of those cases before parties are forced to incur substantial litigation expenses." *Doe v. Roe*, 638 S.W.3d 614, 618 (Tenn. Ct. App. 2021) (quoting Hambidge et al., *supra*, at 15). As such, when the TPPA applies, it merely expedites the time frame for the plaintiff to meet his or her ultimate burden of establishing the prima facie elements of his or her cause of action or for the defendant to establish a valid defense. Tenn. Code Ann. § 20-17-105(b). Moreover, even though the burden-shifting mechanism occurs pre-discovery, the TPPA does not unequivocally prevent discovery prior to the adjudication of a TPPA petition. *See* Tenn. Code Ann. § 20-17-104(d) (noting that while the filing of a TPPA petition results in a stay on discovery, the trial court "may allow specified and limited discovery relevant to the petition upon a showing of good cause"). The General Assembly clearly concluded that the benefit to such a procedure was worth the burden triggered by the TPPA, and we do not question our legislature's wisdom on this issue. *See Dennis v. Sears, Roebuck & Co.*, 223 Tenn. 415, 426, 446 S.W.2d 260, 266 (Tenn. 1969) ("[T]he courts are not at liberty, ever, to question the wisdom or policy of an act of the legislature. Their duty is to enforce the acts as passed[.]").[19]

---

[18] As previously discussed, a constitutional challenge to the application of the TPPA to this case was raised by Mr. Cartwright. He has not asserted that the Tennessee General Assembly violated either the Tennessee or United States Constitution in enacting the TPPA.

[19] Should the General Assembly desire to exclude legal malpractice claims from the ambit of the TPPA in the future, it can certainly follow the Texas Legislature's lead to carve out an express exemption

- 15 -

Having determined that legal malpractice claims are not categorically excluded from the ambit of the TPPA, we turn to the allegations of the Second Amended Complaint to determine if Appellants made out a prima facie case that the claims are "based on, relate[] to, or [are] in response to a party's exercise" of the right to petition. Tenn. Code Ann. § 20-17-105(a); *see Pragnell v. Franklin*, No. E2022-00524-COA-R3-CV, 2023 WL 2985261, at *11 (Tenn. Ct. App. Apr. 18, 2023) (noting that meeting the burden to "present a *prima facie* case, in other words, [calls for] 'some credible proof . . . on the issues required to be offered in evidence' by each party" (quoting *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 93 (Tenn. Ct. App. 1978))). We conclude that they did. In particular, the Second Amended Complaint alleges that Appellants represented Mr. Cartwright "in six different lawsuits," as well as a seventh "ghost-writ[ten]" lawsuit; used "the representation of Mr. Cartwright . . . in the lawsuits" for their own economic benefit; continued the litigation in order to earn a contingency fee "from any of those lawsuits"; encouraged Mr. Cartwright to pursue the lawsuits by, inter alia, taking Mr. Cartwright out to celebrate "how well things were going"; filed two lawsuits even after admitting that they would be time-barred; and finally, injured Mr. Cartwright when he was assigned personal liability in 2018 in the form of judgments in two of the Trust Lawsuits. Thus, the allegations in the Second Amended Complaint, at the very least, have to do with the petitions filed by Appellants on behalf of Mr. Cartwright. *See* Tenn. Code Ann. § 20-17-105(a); *Relate*, *Webster's New World College Dictionary*. As such, Appellants have met their burden to establish that the first prong of the TPPA is met. The trial court's denial of the TPPA petition to dismiss on the ground that Appellants did not meet the first prong of the statutory analysis is therefore reversed.

Because Appellants met their burden to establish that this legal action relates to Appellants' petitioning activity, the burden then shifted to Mr. Cartwright to establish his prima facie case. Appellants also had the opportunity to establish "a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). Appellants contend that they established such a defense by demonstrating that Mr. Cartwright's claims are barred by the expiration of the applicable statute of limitations and/or by demonstrating that the claims are barred by judicial and equitable estoppel. Mr. Cartwright asserts, however, that upon finding that the TPPA applies, this Court should remand the matter to the trial court for consideration of his constitutional argument.

In general, this Court only reviews issues that are presented and decided by the trial court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts. . . ."); *see also In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008). In other words, "when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial

for claims of this type. However, we must interpret the law as it is currently written in this appeal.

- 16 -

court to make a determination in the first instance." ***Mid-S. Maint. Inc. v. Paychex Inc.***, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *14 (Tenn. Ct. App. Aug. 14, 2015). This rule has been applied even when our review is de novo. *See, e.g.*, ***Johnson v. Rutherford Cnty.***, No. M2017-00618-COA-R3-CV, 2018 WL 369774, at *9 (Tenn. Ct. App. Jan. 11, 2018) ("[T]he trial court did not rule on [the] motion for summary judgment; therefore, this Court could not address it in the first instance." (citing ***Dorrier***, 537 S.W.2d at 890)).

Here, the trial court denied Appellants' motion to dismiss solely on the basis that Appellants had not met the first prong of the TPPA burden-shifting framework. The trial court therefore did not rule on either Mr. Cartwright's constitutional challenge, whether Mr. Cartwright could establish his prima facie case, or whether Appellants had established valid defenses to this action. We therefore conclude that the proper remedy is to remand to the trial court for consideration of these remaining issues.

As a final matter, Mr. Cartwright asserts that he should be awarded damages for defending against a frivolous appeal. Because Appellants' appeal was not frivolous, we deny Mr. Cartwright's request.

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is reversed, and this cause is remanded to the trial court for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellee, Alan C. Cartwright, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE